528 So.2d 776 (1988)
STATE of Louisiana, Appellee,
v.
Eugene BAKER, Appellant.
No. CR88-9.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1988.
*778 Patricia Thomas, Abbeville, for Baker.
Louis Garrot, Asst. Dist. Atty., J. Nathan Stansbury, Dist. Atty., Abbeville, for State.
Before FORET, YELVERTON and KNOLL, JJ.
FORET, Judge.
Defendant, Eugene Baker, was indicted on two counts of aggravated kidnapping, a violation of La. R.S. 14:44. A twelve-person jury unanimously found defendant guilty as charged, and he was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence on each count. The sentences were directed to be served concurrently. Defendant appeals his conviction and sentence based on six assignments of error.
Assignment of error number six has not been briefed and is therefore considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
At approximately 8:00 p.m. on October 15, 1985, Melvin Hill returned from work to his home in Vermilion Parish and, as he exited his truck, was approached from behind by a person armed with a shotgun. The assailant, later identified as defendant, Eugene Baker, ordered Hill into his home. A short time later, Eva Hill, Melvin's wife, arrived home from a Bible class. Upon entering the house, Eva observed her husband being held at gunpoint by Baker.
At the time of the incident, Baker was the estranged husband of Linda, the niece of Melvin and Eva Hill. Baker ordered the Hills to phone Linda in Houston. He informed the Hills and Linda that he would kill the Hills if Linda did not bring his furniture and other property in her possession by 3:00 p.m. the following day. Baker armed himself with a second shotgun and a knife, and repeatedly loaded and unloaded the guns throughout the ordeal. He also carried a canister which he asserted contained explosives which would be used if his demands were not satisfied.
The episode continued throughout the night and into the following day. During the night the electricity to the house was disconnected by the police. Police and relatives phoned and approached the house to ascertain the status of the occupants of the house. On each occasion when someone approached the house, Baker would place a gun to Eva Hill's head and the knife to her side and threaten to kill her if they did not leave. Baker reiterated his demands to the Vermilion Parish Sheriff and threatened to blow up the house if his demands were left unsatisfied.
Sometime during the night, Baker agreed to abandon his quest, allow the captives to leave, and surrender himself peacefully if he were allowed to speak with his mother. An FBI officer at the scene then made arrangements for an airplane to transport the mother from Alabama to Vermilion Parish. At about 9:00 a.m., Baker unloaded the guns for the final time. He then showered and prepared to release the Hills. Because Melvin Hill was ill he was allowed to depart at about 3:00 p.m., prior to the arrival of Baker's mother. Hill informed officers at the scene that the guns were unloaded and that Baker requested an unarmed officer to "sit with" him to insure his safety. An unarmed officer entered the house and, about one hour later when Baker's mother arrived at the scene, escorted Baker from the house.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, Baker alleges error in the trial court's failure to strike the original panel of prospective jurors when one juror made prejudicial remarks against him during voir dire. Baker argues that the trial court's actions resulted in a denial of an impartial jury.
*779 At jury selection, the trial court sequestered the entire jury venire from the original panel of twelve prospective jurors being questioned by attorneys. One of the prospective jurors expressed a preconceived opinion as to the guilt of Baker, which would interfere with the ability to be impartial. Defense counsel challenged this juror for cause. The prosecutor requested and was granted permission to question this juror further. The following exchange then occurred:
"Q. ... they have common sense and they can listen to the facts from the witnesses who were there to get firsthand information from those people. Then they said that they're willing to decide the case simply on what is presented in the courthouse. If he's guilty, they'll find him guilty. If he's innocent, they'll find him innocent. Now, can't you do that too?
A. No, I don't believe I could. Because right now I've found him guilty.
Q. Just because he's sitting there?
A. No. No. Because he went ahead and done the act.
Q. But you see it's for the State to prove that.
A. I know that it is. In my mind he's guilty.
Q. Okay.
A. In the first place he shouldn't have done it.
Q. Okay.
A. Now, I don't know if he hurt the old people or not."
The district attorney then moved for the potential juror to be excused for cause. Defense counsel moved that the entire panel be struck. After denying defense counsel's motion, the trial judge admonished the panel to disregard the statements. The judge then inquired as to whether any panel member would be influenced by the statements. The remaining members answered in the negative. During later voir dire, these panel members affirmatively acknowledged that they possessed no opinion of guilt, comprehended the burden of proof and would consider Baker innocent until proven guilty.
A trial judge has broad discretion in determining a juror's qualification and may disqualify a prospective juror when, for any reason, doubt exists as to the competency of the prospective juror to serve in a case. La.C.Cr.P. art. 787. The state or defendant has grounds to challenge a juror for cause if the juror is not impartial, whatever the cause for his partiality. La.C.Cr. P. art. 797(2). The trial judge is vested with broad discretion in ruling on challenges for cause and the ruling will not be disturbed absent a showing of abuse of discretion. State v. Gibson, 505 So.2d 237 (La.App. 3 Cir.), writ. denied, 508 So.2d 66 (La.1987); State v. Williams, 447 So.2d 495 (La.App. 3 Cir.), writ. denied, 450 So.2d 969 (La.1984).
The defense motion in the instant case was effectively a challenge for cause of the eleven other prospective jurors on the panel. State v. Kohler, 434 So2d 1110 (La.App. 1 Cir.1983). As in Kohler, Baker argues that the statements by the excused juror precludes the other jurors from earnestly performing the duties of a juror. However, after the incident complained of, the trial judge admonished the remaining prospective jurors and inquired as to any possible opinions, preconceptions and biases. The judge was in the best position to determine the veracity of these jurors. It does not appear from the record that the trial judge abused his broad discretion in rejecting Baker's challenge for cause.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Baker contends that the prosecutor used peremptory challenges to systematically exclude blacks from serving on the jury and asserts this procedure has been regularly used over a period of time in Vermilion Parish.
Louisiana courts, relying on Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), have consistently held that there is a presumption that a prosecutor uses peremptory challenges in order to obtain an impartial jury. A constitutional *780 violation occurs where the state uses peremptory challenges to systematically exclude blacks over a period of time without a non-discriminatory justification. See State v. Taylor, 483 So.2d 232 (La.App. 3 Cir.), writ. denied, 488 So.2d 196 (La.1986), and cases cited therein. The Swain decision and its progeny ruled that a constitutional challenge could not be based upon a showing of exclusion of blacks in a particular case. State v. Bessard, 461 So.2d 1201 (La.App. 3 Cir.1984), writ. denied, 466 So. 2d 467 (La.1985).
The Swain decision was recently reviewed by the Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Batson court reaffirmed the principle that equal protection is denied in instances where a black defendant is tried before a jury from which members of his race have been purposely excluded. Such actions, it was said, operate to undermine confidence in equality and fairness of the criminal justice system.
The Batson court modified Swain by simplifying the evidentiary burden on a defendant who asserts a constitutional violation in the state's use of peremptory challenges. The defendant may now make a prima facie case of purposeful discrimination in selection of a petit jury based upon the circumstances of defendant's case. To establish such a case, the defendant must show: 1) that he is a member of a cognizable racial group and, 2) that the prosecutor exercised peremptory challenges to remove members of defendant's race from the venire. The defendant must then show that the facts and circumstances at voir dire raise an inference that the prosecutor used his peremptory challenges with a discriminatory mind to exclude veniremen from the jury on account of their race. Batson, supra; State v. Brown, 507 So.2d 304 (La. App. 3 Cir.1987); State v. Mims, 505 So.2d 747 (La.App. 2 Cir.1987). If the defendant makes such a showing, the burden shifts to the state to put forth a racially neutral explanation for challenging those jurors. Batson, supra; Brown, supra.
The record in this case does not reflect that the prosecutor exercised peremptory challenges to exclude blacks from the jury on the account of their race. The State exercised only one peremptory challenge during voir dire. That challenge did operate to exclude a black from the jury, and defendant, Baker, is black. The State, by brief, states that only two black venire-persons were involved in the trial; one was challenged for cause by the defense and one was challenged peremptorily by the State. However, the record does not otherwise indicate the racial make-up of the jury selection. The facts presented fail to raise an inference that the State's peremptory challenge was exercised with "a mind to discriminate." It should be noted that the prosecutor indicated for the record that the juror was excused because he was related by marriage to the victims and that he appeared "inattentive" during questioning. The record is absent of evidence which would support an inference that the use of a single peremptory challenge by the State had as its purpose the exclusion of a black juror on account of his race.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
Baker argues that the trial court erred by permitting the State to introduce hearsay testimony. In particular, he objects to the following portion of the transcript where the prosecutor was questioning one of the victims:
"A. Unlocked. And I heard Melvin talking real loud. So when I walked in the house, I asked him, I said: Who are you talking to? He said: I'm talking to Eugene [Baker]. I said: Eugene, what is he doing here. I said: Why you let him in. He said
MS. THOMAS: Your Honor, I object to this narrative form which contains hearsay.
MR. GARROT: Okay. I don't mind rephrasing.
THE COURT: Rephrase your question.
MR. GARROT: Q. What question did you ask
A. Melvin?
*781 Q. Yes.
A. I asked him who you were talking to.
Q. All right. What did he say?
A. He said he was talking to Eugene."
Defense counsel's hearsay objection was again asserted. The trial court overruled the objection ruling that the statement was part of the res gestae of the crime.
"Res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before and after commission of crime but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances. La.R.S. 15:447 and 448;"
State v. Drew, 360 So.2d 500, 518 (La. 1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1978); See also, State v. Howard, 517 So.2d 266 (La.App. 1 Cir.1987).
The testimony of the witness related to a statement made by a victim during the crime. It is evident under the circumstances that the witness was testifying to a continuous chain of events which included the contested statement. Thus, the victim's response constituted res gestae.
Furthermore, even if the statement is not part of the res gestae, there is clearly no error caused by its admission. The statement merely identifies the perpetrator of the crime. Several witnesses, including the two victims, identified Baker as the individual who committed the crime. Identification was never made an issue at trial. Overwhelming evidence unequivocably identified Baker as the culprit. Therefore, if admission of the statement was erroneous, it was harmless under the circumstances. La.C.Cr.P. art. 921.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4.
Baker contends that the trial court erred in admitting motel records into evidence under the business records exception to the hearsay rule. He argues that the witness who produced the records did not prepare the documents. Therefore, the evidence should not have been admitted without a showing that the preparer was genuinely unavailable. The admission of this evidence, it is alleged, constitutes reversible error.
Except where specified by law, hearsay evidence is inadmissible. La.R.S. 15:434. Although there is no statutory formulation of a Louisiana business records exception, the existence of such an exception to the hearsay rule has long been recognized by Louisiana courts. State v. Vessell, 450 So. 2d 938 (La.1984); State v. Monroe, 345 So.2d 1185 (La.1977) and cases cited thereon; State v. Cotton, 511 So.2d 1207 (La. App. 2 Cir.1987).
"Before the exception may be invoked by the State against the defendant, allowing introduction of a permanent record made in the ordinary course of business from personal knowledge of the facts recorded, or from information furnished to one having business duty to observe and report the facts, it must be shown that the person who made the record is genuinely unavailable for testimony, that he had no strong motive to misrepresent, and that in all probability the evidence is trustworthy."
State v. Vessell, supra, at 944, citing State v. Monroe, supra.
In the instant case, the prosecutor introduced, over defense objection, records from the Travel Lodge in Abbeville. The evidence was introduced to rebut an assertion by Baker that he was registered at the hotel, had meetings with Melvin Hill at the hotel, and accompanied Hill to his home. The manager of the hotel testified that the documents were prepared in the ordinary course of business by the night auditor. There was no testimony or other evidence suggesting that this night auditor was not available to testify or that diligent efforts failed to procure her attendance. Because the State failed to establish that the preparer of the documents was genuinely unavailable for testimony, the trial court's *782 ruling admitting these records into evidence appears erroneous.
The erroneous admission of an item of evidence does not warrant reversal unless the error is prejudicial to the defendant. La.C.Cr.P. art. 921. To determine whether an error is harmless, the reviewing court must: 1) determine whether there is a reasonable possibility that erroneously admitted evidence might have contributed to the conviction, and 2) be able to declare a belief beyond a reasonable doubt that the error was harmless. See, State v. Vessell, supra; State v. Cotton, supra.
The assertion by Baker that he stayed in the hotel and Melvin Hill voluntarily accompanied him to the Hill home is only one of numerous factual inconsistencies presented by Baker at trial. Independent of the inadmissible records, the prosecutor presented overwhelming evidence of Baker's guilt based upon the testimony of the two victims and the police officers. Furthermore, had the records been excluded and the jury believed Baker had stayed at the hotel, that fact, unrelated to the elements of the crime charged, would not have been inconsistent with the State's witnesses' version of the facts essential for a conviction. The erroneous admission of the records played a minimal role in Baker's conviction and is harmless.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5.
Baker asserts error in the trial court's refusal to permit him to rebut the prosecution's rebuttal evidence. In criminal trials, the prosecution has the right to rebut the evidence adduced by the defendant, but the defendant is without right to rebut the prosecution's rebuttal. La.R.S. 15:282. The trial court in its discretion may permit the introduction of additional evidence prior to argument. La.C.Cr.P. art. 765(5). The determination of the trial court to deny introduction of surrebuttal evidence will not be disturbed absent an abuse of discretion. State v. Birdsong, 452 So.2d 1236 (La.App. 2 Cir.1984), writ. denied, 457 So.2d 1200 (La.1984); State v. Heath, 513 So.2d 493 (La.App. 2 Cir.1987).
At trial in the instant case, the rebuttal evidence presented by the prosecution consisted of the testimony of the motel manager and a recall of Melvin Hill and a nephew of Hill. The rebuttal was used by the prosecution solely to contradict assertions made by Baker during his testimony. The prosecutor's rebuttal was limited in scope and did not inject entirely new facts into evidence. The trial judge did not abuse his discretion in denying Baker's request to introduce rebuttal evidence.
This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Eugene Baker are affirmed.
AFFIRMED.