544 So.2d 643 (1989)
STATE of Louisiana
v.
Solomon GUILLORY.
No. CR 88-687.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*646 Robert C. Williams, Gail Horne Ray, Baton Rouge, for defendant-appellant.
Richard W. Vidrine, Asst. Dist. Atty., Ville Platte, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
DOMENGEAUX, Judge.
On October 14, 1986, appellant, Solomon Guillory, was indicted by a Grand Jury for armed robbery, a violation of La.R.S. 14:64, and attempted first degree murder, a violation of La.R.S. 14:30 and 14:27. Prior to jury selection on December 15, 1987, the prosecutor announced that the State would proceed on the armed robbery count. On December 22, 1987, a unanimous twelve-person *647 jury found appellant guilty as charged. Appellant was later sentenced to forty-five (45) years at hard labor without benefit of parole, probation or suspension of sentence. Appellant now seeks review of his conviction and sentence based on fourteen (14) assignments of error.

FACTS
On September 9, 1986, Sidney Fontenot and James Thomas decided to rob a convenience store manager in Mamou. In an attempt to finalize plans for the robbery, Fontenot left Thomas at his house and rode past the victim's home on his bicycle. Fontenot encountered an automobile occupied by Greg Joseph, Ronnell Jack, Lindburgh Guillory and appellant, Solomon Guillory. Fontenot informed the group of his intent to rob the victim and was informed that the group had a similar plan which failed because the group had arrived too late. When Fontenot expressed skepticism concerning the group's claim, Lindburgh Guillory produced a firearm in an effort to establish sincerity in the stated cause. The six then proceeded to Fontenot's home to discuss specifics of a robbery. In the presence of the other four, Jack and Thomas agreed to commit the actual robbery at the victim's place of business. When Jack later decided not to participate in the robbery, Joseph accepted the role as the second gunman.
The following evening, the six met at the home of Lindburgh Guillory. Stocking masks were prepared, and appellant agreed to use his automobile to transport the gunmen. Appellant drove Fontenot, Thomas and Joseph to an area behind the targeted convenience store. Pursuant to plans, appellant parked across the street and signalled to the gunmen that the victim had left the store. Thomas, armed with the gun, and Joseph approached the victim as he was entering his automobile. The firearm discharged, and the victim was struck in the side of his face. The gunmen took three money bags, ran down an alley from the scene and met appellant's vehicle near a local football field. Joseph informed the occupants of the vehicle that a shooting had occurred as the four returned to the house where Jack and Lindburgh Guillory were waiting. Fontenot, Thomas and appellant then counted the money. Other participants left the home to conceal the firearm and disposed of the money bags and stockings used during the robbery in a local bayou.

ASSIGNMENT OF ERROR NO. 1:
Appellant contends the trial court erred by denying a defense motion for production of a transcript of the testimony of state witnesses at the trial of Lindburgh Guillory. According to appellant, such testimony constitutes an inculpatory statement of a codefendant and exculpatory evidence subject to production pursuant to La.C.Cr.P. art. 722 and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Finally appellant argues that an in camera review of the testimony by the trial court would have disclosed its exculpatory nature.
La.C.Cr.P. art. 722 mandates that the prosecution allow a defendant access to confessions and other inculpatory statements by a codefendant which are intended for use at trial. Only where such statements are used at trial is the State obligated to submit it to discovery. However, where such statements are exculpatory in nature, La.C.Cr.P. art. 722 and Brady, supra, require the State to produce them, regardless of its intent to use them at trial. The failure of the State to produce exculpatory evidence constitutes reversible error where the evidence would create a reasonable doubt which would otherwise not exist in the context of the whole record. State v. Ruff, 504 So.2d 72 (La.App. 2 Cir.1987), writs denied, 508 So.2d 64, 65 (La.1987); State v. Hamilton, 470 So.2d 604 (La.App. 1 Cir.1985).
In order to mandate reversal of a conviction, it is insufficient for appellant to make conclusory allegations of the existence of statements in the possession of the State. Appellant must also show materiality to the case and the exculpatory nature of those statements. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. *648 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981). Moreover, Brady is applicable to information in possession of the State. Where the criminal defendant has ready access to the allegedly exculpatory evidence, but fails to procure that evidence himself, there is no Brady violation. State v. Arnold, 466 So. 2d 520 (La.App. 3 Cir.1985), writ denied, 470 So.2d 124 (La.1985); Mattheson v. King, 751 F.2d 1432 (5th Cir.1985), cert. denied, 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986).
In the instant case, the earlier trial testimony of codefendants, Joseph and Fontenot, was not used at appellant's trial. Therefore, La.C.Cr.P. art. 722 is inapplicable. Furthermore, the record establishes that retained counsel joined the case on August 8, 1987. The prior trial was held during the final week of October, 1987. The instant trial commenced December 15, 1987. The non-indigent defendant in the instant case could have independently procured a transcript of the testimony. Instead, appellant sought to have the State produce a transcript which the prosecutor did not have in his possession and which was not used at trial. The failure of retained defense counsel to take action to procure transcripts of this earlier testimony is not a Brady violation. Therefore, the trial judge did not err in denying the defense motion for production of the earlier testimony, nor has appellant shown prejudice by failure to provide a transcript.[1]
For these reasons, this assignment of error has no merit.

ASSIGNMENT OF ERROR NOS. 2 AND 11:
By these assignments of error, appellant argues the trial judge erred in failing to grant defense motions to quash the jury venire and for a mistrial on the grounds that the jury was allowed to view appellant in handcuffs. Appellant also contends that the trial court erred in failing to admonish the jury to disregard the handcuffs.
Ordinarily, the trial court shall seek to prevent an accused from being viewed shackled, handcuffed or attired in any manner which is destructive of the presumption of innocence and of the dignity and impartiality of judicial proceedings. State v. Wilkerson, 403 So.2d 652 (La. 1981). However, the momentary use of restraints for the limited purposes of transporting an accused does not mandate a mistrial. State v. Wilkerson, supra; State v. Ware, 478 So.2d 790 (La.App. 3 Cir.1985).
In the present case, defense counsel sought to strike the entire jury venire when appellant was brought into the courtroom on the first day of trial prior to commencement of voir dire in handcuffs. The trial judge denied the motion, informed the jury venire that he was unaware of the handcuffs and ordered the handcuffs removed.
The defense motion was effectively a challenge for cause of the entire jury venire. State v. Baker, 528 So.2d 776 (La. App. 3 Cir.1988). Appellant argues that this initial appearance in handcuffs destroyed the presumption of innocence and precluded any prospective juror from impartially performing the duties of a juror.
Appellant was apparently viewed by the entire jury venire wearing handcuffs. However, during extended voir dire, both defense counsel and the prosecutor repeatedly informed prospective jurors of the presumption of innocence and the State's burden of proof. Each potential juror was questioned concerning possible biases or preconceptions. Under these facts, it does not appear that the trial judge abused his discretion in rejecting a defense motion to strike the entire venire prior to voir dire.
After lunch recess on the fifth day of trial, defense counsel informed the court that appellant may have been seen by *649 "some of the jurors" at an elevator being transported in handcuffs. Although appellant made no particular motion on the record, he alleges the trial court erred by not ordering a mistrial.
In State v. McMellon, 525 So.2d 1094 (La.App. 3 Cir.1988), writ denied, 532 So.2d 149 (La.1988), this court found no reversible error where a defendant was transported into the courtroom in handcuffs as the jurors were returning from lunch break. In denying the claim, the court stated:
In any case, the defendant was not handcuffed during the trial. He was handcuffed solely for the purposes of transport to and from the courtroom. Under the circumstances, the possibility that a juror may have seen the defendant in handcuffs does not appear to have so prejudiced the defendant as to warrant relief on appeal. McMellon, supra, at 1096.
Although some jurors may have viewed appellant in handcuffs being transported to the courtroom from a lunch break, appellant has made no showing of prejudice. The evidence in the instant case was strong, and the momentary use of restraints did not mandate a mistrial. Finally, although defense counsel made objections to appellant being handcuffed in the presence of the jurors, at no time did counsel request an admonition from the judge. Therefore, appellant cannot complain of prejudice resulting from a failure to admonish. State v. Sherer, 411 So.2d 1050 (La.1982).
These assignments of error have no merit.

ASSIGNMENT OF ERROR NO 3:
By this assignment of error, appellant argues the trial judge erred by denying a motion for mistrial when the prosecutor made allegedly prejudicial remarks regarding appellant's right to an appeal.
On the first day of trial and prior to commencement of jury selection, the defense counsel reiterated a request for evidence favorable to the State. After a brief recess, the State produced criminal records and plea agreements made by the State's witnesses. The prosecutor then requested removal of the jury venire until "preliminary matters" were terminated. Prior to removal of the potential jurors, defense counsel stated he was satisfied with the response if all favorable evidence had been disclosed. The prosecutor assured the court that all such evidence had been disclosed and began specifying the materials provided. Defense counsel responded that the record need only reflect that all favorable evidence had been provided. The district attorney then explained to the judge:
"Your Honor, I don't want him to jump up and down before the Supreme Court or the Court of Appeals saying that I didn't give him something that I gave him, that's why we want it in the record."
At that point, a motion for mistrial was entered, and the prosecutor further commented, "I'm the one that asked for the jury to be removed, Your Honor. He doesn't want to remove the jury."
The grant of a mistrial is appropriate when a prosecutor's comment causes the defendant to suffer substantial prejudice which acts to deprive him of a fair trial and an admonition is insufficient. State v. Smith, 433 So.2d 688 (La.1983).
In State v. Baldwin, 388 So.2d 664 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 901 (1981), the Court rejected defense claims of prejudice in upholding the denial of a motion for a mistrial when the prosecutor alluded to the defendant's right to an appeal after repeated objections by defense counsel. Similarly, in the instant case, the remarks of the prosecutor did not deprive appellant of a fair trial. The remarks occurred prior to voir dire. Thereafter, each selected juror unequivocally acknowledged appellant's presumption of innocence and the State's burden of proof. Each promised to judge the case on facts presented at trial and the law as presented by the judge. Under these circumstances, the trial court's denial of appellant's motion for a mistrial does not constitute an abuse of discretion.
Therefore, this assignment of error has no merit.

*650 ASSIGNMENT OF ERROR NOS. 4, 6 and 9:
Appellant asserts by these assignments of error that the trial judge erred in overruling appellant's objection to the prosecutor's use of peremptory challenges to exclude three blacks from the jury, where the prosecutor failed to put forth racially neutral explanations for his use of those challenges. According to appellant, the explanations posited by the prosecutor were a subterfuge because the same personal factors possessed by the excused black jurors were also possessed by an accepted white juror.
A criminal defendant may make a prima facie case of purposeful discrimination in selection of a petit jury based upon the circumstances of the defendant's case. To establish such a case, the defendant must show: 1) that he is a member of a cognizable racial group, and 2) that the prosecutor exercised peremptory challenges to remove members of defendant's race from the venire. The defendant must then show that the facts and circumstances at voir dire raise an inference that the prosecutor used his peremptory challenges with a discriminatory mind to exclude veniremen from the jury on account of their race. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Baker, 528 So.2d 776 (La.App. 3 Cir. 1988). If the defendant makes such a showing, the burden shifts to the State to put forth a racially neutral explanation for challenging those jurors. The explanation offered by the prosecutor need not rise to the level justifying exercise of a challenge for cause. Batson, supra; State v. Mims, 505 So.2d 747 (La.App. 2 Cir.1987).
During voir dire, the prosecutor used a peremptory challenge to exclude an unemployed, single woman who had two children and who had never been married. In explaining the reasons for the challenge, the prosecutor mentioned the "moral implications" of persons who are unwed mothers. He also stated this potential juror smiled during voir dire and gave facial expressions which seemed to indicate a lack of understanding of his questions.
The second potential black juror peremptorily excused by the State was an unemployed father of three who had formerly worked in Mamou, and who had seen, but did not have a personal relationship with, the victim. In explaining the challenge, the prosecutor mentioned the juror's sporadic employment history and stated he appeared timid. The prosecutor explained that the juror's eye contact, coupled with other personal factors, made him feel uncomfortable about accepting him as a juror.
The third potential black juror excused was the married father of two children. An explanation for exercising the challenge was that the juror testified he had a brother and other relatives who reside in the area of Mamou where appellant lived. The juror stated he knew of appellant and his family. Although the relationship was not personal, the juror stated he shares the same friends and that he had heard about the case.
At that point, defense counsel informed the trial judge that a white male juror with similar personal factors and life-style was accepted by the State. This juror was single, lived in Mamou with a girlfriend, and had recently become unemployed. The juror recognized appellant although he did not know appellant or his family socially. He acknowledged hearing "gossip" regarding the case and being familiar with the victim as the owner of a local store. Finally, this juror answered the standard voir dire questions concerning legal principles surrounding the trial.
Although appellant has satisfied the initial criteria for establishing a prima facie case of purposeful discrimination, the transcript does not reflect that the prosecutor exercised his peremptory challenges with a discriminatory mind to exclude veniremen from the jury on account of their race. At the time of the final Batson challenge, one of the six (6) jurors who had been chosen was black. The record does not reflect the racial makeup of the entire venire or the final twelve (12) person jury. However, when each of the Batson challenges was made by defense counsel, the prosecutor immediately articulated a racially neutral *651 explanation for the challenge. The prosecutor did not merely seek to show nondiscriminatory purposes by denial or assurance of good faith, but rather, he expressed specific reasons for the exclusion of each individual. The transcript supports the neutral explanations given by the prosecutor for the peremptory challenges of the three potential black jurors. Although the white juror focused upon by appellant does possess similar personal factors to each of the three excluded jurors, his acceptance by the prosecutor does not indicate purposeful discrimination.
Therefore, these assignments of error have no merit.

ASSIGNMENT OF ERROR NO. 5:
By this assignment, appellant contends the trial judge erred by allowing the prosecutor to proceed under a single count of the indictment without sufficient notice to the defense and without formal motion to the trial judge. Appellant also alleges substantial prejudice was suffered when the jury heard reference to the attempted murder count.
Prior to jury selection, the prosecutor announced the State elected to proceed only on the armed robbery count. During voir dire of the first two potential jurors, the prosecutor stated appellant was charged with armed robbery, and he questioned those potential jurors about armed robbery. While traversing the same jurors, defense counsel mentioned that appellant was also charged with attempted first degree murder. The prosecutor immediately repeated the State's intent to proceed solely with the armed robbery count. After discussion, the judge admonished the jury venire, at defense counsel's request, to disregard any reference to the attempted murder charge.
Appellant insists that La.C.Cr.P. art. 495.1 prohibits the district attorney from proceeding to trial on a single count of a multi-count indictment without advance notice to defendant and without court authorization. Appellant cites no authority in support of his contention, yet he argues that substantial prejudice was suffered.
The district attorney has full control over every criminal prosecution instituted in his district. He alone determines whom, when and how he shall prosecute. La.C.Cr.P. art. 61; State v. Perez, 464 So.2d 737 (La. 1985); State v. Kibodeaux, 435 So.2d 1128 (La.App. 1 Cir.1983). The exercise of the right to control the prosecution cannot, however, be used to deny the defendant's constitutional rights. State ex rel. Eames v. Amiss, 288 So.2d 316 (La.1974).
In the instant case, there appears to be no statutory prohibition against the prosecution of a single count of a multi-count indictment. The prosecutor clearly articulated before jury selection the State's intent to proceed on the armed robbery charge. Apparently, defense counsel stood prepared to represent appellant on both counts. The fact that only one count was prosecuted did not prejudice appellant. The limiting instruction operated to insure that appellant was not prejudiced by the single reference to the attempted murder charge made by defense counsel. Because the prosecutor's exercise of his discretion to control the prosecution did not deny appellant's constitutional rights nor did it deprive him of a fair trial, there was no error in the trial court's ruling.

ASSIGNMENT OF ERROR NO. 7:
Appellant alleges the trial judge erred by improperly limiting voir dire when the defense counsel sought to question a potential juror as to his perception of the concept of "reasonable doubt".
Article 1, Section 17 of the Louisiana Constitution affords to the defendant in a jury trial the right to full voir dire examination of prospective jurors. This constitutional article provides defendants in criminal jury trials an opportunity to discover grounds for challenges for cause, and it also enables defendants to secure information to allow the intelligent exercise of peremptory challenges. State v. David, 425 So.2d 1241 (La.1983); State v. Drew, 360 So.2d 500 (La.1978). La.C.Cr.P. art. 786 gives a trial judge discretion to regulate the scope of the examination. However, *652 when the trial judge acts to obstruct the purposes behind voir dire examination, he unfairly restricts the right of the defendant to a fair trial by jury. Although the trial judge is vested with discretion to limit voir dire examination, he must afford wide latitude to defense counsel to protect the accused's right to a fair trial. State v. Monroe, 329 So.2d 193 (La.1976). Whether a court's ruling limiting voir dire constitutes an abuse of discretion requires a review of the entire examination. State v. Jackson, 450 So.2d 621 (La.1984).
During questioning of the potential juror in the contested incident, the State inquired as to the juror's understanding of various legal concepts, including the reasonable doubt standard. Defense counsel then questioned the juror about various concepts. In seeking to determine the juror's understanding, the following transpired:
Q. Okay. Do you have, in your mind, a definition or a feel for what the term beyond a reasonable doubt that the State must prove it's case beyond a reasonable doubt. Do you have such a feel in your mind as to what that means?
A. Yes ma'am.
Q. Okay. Could you kind of explain to me what it means to you?
A State objection to this question was sustained. The trial judge then defined reasonable doubt, and the juror responded affirmatively to an inquiry as to his understanding of the concept.
In the instant case, the action of the trial court was not an abuse of discretion. The ruling did not operate to prevent defense counsel from having the opportunity to discover grounds for the intelligent exercise of challenges. Defense counsel was not prevented from questioning the juror regarding an understanding of legal concepts. This case is closely analogous to State v. Reado, 472 So.2d 271 (La.App. 1 Cir.1985), where the court, in holding that the trial judge properly restricted voir dire by excluding a defense counsel request that the juror define armed robbery, stated "[t]he purpose of voir dire is to select impartial jurors, not to give them instructions on the law and then a quiz on how much they have learned." Reado, supra, at 274.
For these reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 10:
By this assignment of error, appellant argues that the trial court committed reversible error by permitting a State witness to testify concerning hearsay statements made by Lindburgh Guillory. Appellant insists La.R.S. 15:455 does not apply because appellant was not charged with conspiracy, and Lindburgh Guillory was not charged as a codefendant with appellant.
Although the defendant is not charged with the crime of conspiracy, but only with the substantive offense of armed robbery, reference to the law of conspiracy can be relevant to permit the State to utilize the pertinent evidentiary rules. State v. Davis, 430 So.2d 680 (La.App. 2 Cir. 1983), writ denied, 433 So.2d 1056 (La. 1983). Only if the prosecution adduces evidence sufficient to establish a prima facie case of conspiracy may the State utilize the law of conspiracy. State v. Gutter, 393 So.2d 700 (La.1981). A prima facie case of conspiracy is presented by introduction of either direct or circumstantial evidence which, if unrebutted, is sufficient to establish the fact of conspiracy. State v. Johnson, 438 So.2d 1091 (La.1983); State v. Stringer, 496 So.2d 1287 (La.App. 3 Cir. 1986), writ denied, 503 So.2d 474 (La.1987).
The contested hearsay statement occurred when Sidney Fontenot testified concerning the actions of several parties in preparation for the robbery. After mentioning the incident where Lindburgh Guillory produced a firearm, Fontenot testified that he had heard Lindburgh procured the gun from an acquaintance in Oakdale. Defense counsel entered a hearsay objection, arguing that La.R.S. 15:455 could not be invoked in the instant case.
The State duly notified appellant in its responses to discovery of its intent to use hearsay statements of co-conspirators. *653 The evidence presented at the trial clearly established a conspiracy involving all six (6) parties in planning, executing and attempting to conceal the group's involvement in an armed robbery. The fact that appellant and Fontenot were named in an indictment as codefendants and Lindburgh Guillory was charged in a separate indictment with conspiracy to commit armed robbery does not prevent the State from utilizing the evidentiary rule permitting introduction of hearsay statements of co-conspirators made in the furtherance of the conspiracy. The actions of the conspirator in procuring the firearm used in the robbery is obviously an action performed in furtherance of the criminal enterprise. Finally, even if the hearsay statement was not admissible under La.R.S. 15:455, its erroneous introduction is harmless because reference to the procuration of the firearm was collateral to the issues upon which guilt was established. La.C.Cr.P. art. 921; State v. Stringer, supra.
For these reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NOS. 8 AND 12:
By these assignments of error, appellant contends the trial judge erred in denying two defense motions: a motion for a mistrial based on an improper voir dire examination by the State and a motion for a new trial.
Appellant has failed to brief these issues; therefore, these assignments are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982). However, it can be noted that the new trial motion asserts errors which are discussed in this review and which have been found to be meritless. Under such circumstances, denial of the new trial motion was not erroneous. See, State v. Sneed, 328 So.2d 126 (La.1976).

ASSIGNMENT OF ERROR NOS. 13 AND 14:
Appellant contends that the sentence imposed by the trial court is excessive and that the trial judge failed to state adequately for the record the reasons for sentencing.[2] Appellant asserts that a forty-five (45) year sentence without benefit of parole, probation or suspension of sentence is grossly disproportionate to the severity of the offense because appellant has no prior felony record, his involvement in the instant crime was limited and extended incarceration would entail undue hardship on his dependents. Lastly, appellant insists imposition of a sentence without benefit of a pre-sentence investigation report demonstrates the court's failure to consider adequately mitigating factors in particularizing the sentence.
La.C.Cr.P. art. 894.1 provides criteria for consideration in determining whether a sentence is excessive. That article mandates that "the trial court shall state for the record the considerations taken into account and the factual basis, therefore, in imposing sentence." State v. Cox, 369 So.2d 118 (La.1979); State v. Sepulvado, 367 So.2d 762 (La.1979). The sentencing judge need not articulate every mitigating and aggravating circumstance. However, the record should reflect that the sentencing judge considered the guidelines in particularizing the sentence to the offender and the offense. State v. Bourgeois, 406 So.2d 550 (La.1981). Failure to comply adequately with art. 894.1 does not necessitate remand for resentencing if the record supports the sentencing choice such that the sentence is not apparently severe in relation to the offender and the offense. State v. Smith, 430 So.2d 31 (La.1983); State v. Howard, 511 So.2d 11 (La.App. 3 Cir.1987).
*654 The trial court is given wide discretion in imposing sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
After denial of the new trial motion, defense counsel requested sentencing, waiving all statutory delays. Although a pre-sentence investigation report had not been prepared, the trial judge allowed both the prosecutor and the defense counsel to argue mitigating and aggravating circumstances. Defense counsel emphasized to the court appellant's age, lack of a prior felony record and his present family situation. Counsel argued that appellant played a limited role in the robbery and that appellant could be successfully rehabilitated with a lenient sentence.
In articulating his reasons for the sentence, the judge noted the seriousness of the offense. The judge stated that the victim was threatened with and suffered severe injuries by the gunshot. The judge considered appellant's level of involvement in supplying transportation for and signalling to the gunmen as a major factor in the completed offense. In mitigation, the judge noted appellant's age (24) and the lack of a prior felony record. Based on the facts of the case, the judge concluded appellant was in need of correctional treatment, posed a risk of recidivism and that a sentence shorter than forty-five (45) years would deprecate the severity of the offense.
Although sentencing occurred without benefit of pre-sentence investigation, such an investigation is not mandated by statute. Where defendant failed to request preparation of a pre-sentence report, there is no error if the trial court fails to order one. La.C.Cr.P. art. 875; State v. Rice, 471 So.2d 837 (La.App. 2 Cir.1985), writ denied, 475 So.2d 1104 (La.1985).
Although the trial judge did not articulate every mitigating factor, the record reflects that the sentence was sufficiently particularized to the offender and his offense. Appellant's conviction permitted a term of imprisonment between five (5) and ninety-nine (99) years. The forty-five (45) year sentence imposed lies in the midrange of sentencing alternatives. Appellant played an active role in a well-planned robbery which resulted in serious injury to the victim. Although appellant was not present when the gunshot was fired, he did use his automobile to transport the gunmen to initiate the actual robbery and to facilitate their escape. A midrange sentence for armed robbery imposed on a young defendant with no prior felony record is appropriate where there is adequate articulation of reasons and support in the record. State v. Nealy, 450 So.2d 634 (La.1984); State v. Toomer, 461 So.2d 387 (La.App. 4 Cir.1984). In State v. Cowans, 503 So.2d 772 (La.App. 3 Cir.1987), this court upheld a forty (40) year armed robbery sentence for a first offender who was the mother of a young child and who acted as a "lookout" during the actual robbery.
Under the circumstances, the trial judge did not abuse his broad discretion in sentencing appellant to forty-five (45) years without benefit of parole, probation or suspension of sentence.
Therefore, these assignments of error are without merit.
For the above and foregoing reasons, the conviction and sentence of Solomon Guillory are affirmed.
AFFIRMED.
NOTES
[1] Although not part of the appellate record, it should be noted that a review of the testimony of these witnesses from the earlier trial shows no substantial variance and almost complete identity of testimony. See, State v. Guillory, 540 So.2d 1212 (La.App. 3 Cir.1989), our docket # CR88-439. Therefore, a transcript of the previous testimony would not have provided an effective means to impeach the testimony in appellant's trial, nor would it have created a reasonable doubt which did not otherwise exist.
[2] The author of this opinion is compelled to again state his position as to appellate review of sentences for excessiveness. Our state constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), concurring opinion at 533; State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir. 1983), concurring opinion at 1339, writ denied, 433 So.2d 729 (La.1983). See also State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), concurring opinion at 1169; see also State v. Rainwater, 457 So.2d 1280 (La.App. 3rd Cir.1984), concurring opinion at 1282.