DOUCET, Judge.
The defendant, Paul S. Brown, Jr., was charged by bill of information with the crime of simple burglary, a violation of La.R.S. 14:62. On September 29, 1988, a jury of six unanimously found the defendant guilty as charged. The defendant was, thereafter, sentenced by the trial judge to twelve years at hard labor. The *829 defendant is appealing his conviction based on two assignments of error.
FACTS
On September 3, 1986, Ken Corumia contacted the Acadia Parish Sheriffs Office because the defendant had approached him about assisting in a jewelry burglary in Kinder, Louisiana.[1] The defendant needed Corumia to assist by providing transportation for him. Corumia agreed to act as an undercover agent for the Sheriffs Office. Corumia was told not to contact or entice the defendant in any way but to let the defendant contact him. The Sheriffs Office provided Corumia with a car so that he could drive the defendant around.
On September 6,1986, the defendant contacted Corumia at around 2:00 p.m. while Corumia was at his girlfriend’s house, which was right across the street from the house of the defendant’s sister in Crowley, Louisiana. The defendant wanted to inspect several places. Corumia contacted the Sheriff’s Office before leaving his girlfriend’s home. The police maintained a surveillance on Corumia and the defendant. Corumia and the defendant went to Church Point, Louisiana to examine Church Point Wholesale and a gunshop, but did not break in because the defendant did not think that either situation looked good. They came back to Crowley and Corumia dropped off the defendant at the defendant’s apartment at around 6:00 p.m. The defendant wanted to go to Morse, Louisiana later that night. The police continued to maintain a surveillance on them that night.
Corumia went to his girlfriend’s house at around 7:00 p.m. and the defendant was standing outside waiting for him. They went to defendant’s apartment so the defendant could get his tools; a flashlight, crowbar, screw driver, tire tool, and hammer. They drove to Morse and from there to Gueydan, and then back to Morse. They proceeded to drive from Morse to Duson, to Eunice, to Iota, and finally, to Estherwood, inspecting the respective post offices in these towns. None of these post offices, however, were burglarized by the defendant.
Corumia and the defendant left Esther-wood heading back towards Crowley on Highway 90 when the defendant had Coru-mia stop on the side of the highway approximately four miles outside of Crowley in front of A.J. Toups’ camp. The defendant had Corumia raise the car hood and pretend like he was having car trouble. While they were standing in front of the car, Officer LaCombe and his partner drove by in an unmarked unit slightly after midnight. The officers proceeded towards Crowley where they turned around and waited for a few minutes. The defendant walked to the camp to see if anyone was sleeping there. The camp was at least a quarter of a mile from the highway. There were two big steel gates that went across the driveway leading to the camp that were locked that night.
When the defendant was positive that no one was in the camp, he returned to the car to get his tools in order to get a television he observed in the camp. The officers waited for around ten (10) minutes and headed back in the direction of Corumia and the defendant. When they reached the driveway in front of the Toups’ camp, only Corumia was standing near the car. They stopped and asked Corumia if he needed any help. Corumia came up to the officer and informed them that the defendant had gone to the camp to get a television. The officers drove down the road and turned around to survey the vehicle. Corumia heard loud noises coming from the direction of the camp including banging and glass breaking. The defendant came back with the Toups’ television and placed his tools on the floor board in front of him. The two of them began driving to the defendant’s apartment so the defendant could drop off the television. Officer LaCombe requested one of the patrol deputies in Crowley to stop the car in which Corumia and the defendant were driving. The car *830 was stopped and the defendant was arrested. When the officers returned to the Toups’ camp, the camp door had been pried open with what looked like either a tire tool, crowbar, or screwdriver.
ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the defendant alleges that he was charged and convicted of simple burglary as the result of an entrapment operation set up by the Acadia Parish Sheriff’s Office and, thus, his conviction should be reversed.
Entrapment is perpetrated when a law enforcement official or person operating in cooperation with such official for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another to engage in conduct constituting such offense when he is not otherwise disposed to do so. State v. Batiste, 363 So.2d 639 (La.1978); State v. Bernard, 441 So.2d 817 (La.App. 3rd Cir. 1983), writ denied, 445 So.2d 439 (La.1984). Where entrapment is an issue, the focal point of inquiry is the predisposition of the defendant to commit the crime at issue as well as the conduct of the police. State v. Batiste, 363 So.2d at 642; State v. Bernard, 441 So.2d at 820. The entrapment defense will not lie if the officers or agents have merely furnished a defendant, who is predisposed to commit the crime, the opportunities to do so. State v. Moody, 393 So.2d 1212 (Ea.1981); State v. Bernard, supra. Entrapment is ultimately a factual question for the jury’s determination. State v. Brown, 352 So.2d 690 (La.1977).
The testimony presented by the state established that the idea to ultimately burglarize the Toups’ camp originated from the defendant, not from any police officer or undercover agent. After driving around for a few hours checking out several possible locations to burglarize, the defendant told Corumia to stop alongside the highway next to the Toups’ camp. The defendant alone forcefully entered the camp and stole the television. None of the officers or the agent enticed or induced the defendant to commit the crime. The officers merely furnished the defendant with the transportation needed to get to the scene of the eventual crime. Although the defendant complains that Corumia was paid $250.00, this money was merely reimbursement for Corumia’s expenses.
The defendant insisted that Corumia was the person who broke into the camp and stole the television. The defendant testified that Corumia approached him on September 6, 1986 about assisting in cleaning the Toups’ camp. Defendant testified that Corumia offered to pay him $20 for his assistance. Defendant added that later that evening, he and Corumia drove to the camp, Corumia opened the steel gates, drove up to the front of the camp and entered the camp. Defendant added that there was nothing to be cleaned up, but that Corumia removed the television from the camp in order to bring it to Mr. Toups. Defendant did not know where the tools found in the car came from.
Where there is conflicting testimony as to a factual matter, the question of credibility of witnesses is within the sound discretion of the trier of fact. State v. Klar, 400 So.2d 610 (La.1981); State v. Barnes, 520 So.2d 838 (La.App. 3rd Cir.1987). Determinations of the credibility of a witness will not be disturbed on appeal in the absence of manifest error. State v. Nolan, 503 So.2d 1186 (La.App. 3rd Cir.1987), writ denied, 507 So.2d 226 (La.1987).
The defendant’s story was rejected by the jury as it was easily contradicted by the state’s evidence. Despite the defendant’s allegations, the police officers who kept a surveillance on the defendant and Corumia that night never saw Corumia drive the car down the driveway. Furthermore, the steel gates were locked that night and Mr. Toups stated that he did not give Corumia or the defendant the keys to his gate. Additionally, the tools were found on the floor board of the passenger’s side of the car where the defendant was sitting and allegedly did not notice them underneath his feet. Thus, we find that the jury did not err in rejecting the defendant’s defense of entrapment. Thus, this assignment of error is without merit.
*831 ASSIGNMENT OF ERROR NO. 2
In defendant’s second and final assignment of error, he urges that the trial court erred because he is a black male who was tried and convicted by an all-white jury despite objections by defense counsel. The defendant contends that the use of the peremptory challenges by the state to exclude prospective black jurors from serving on the jury denied the defendant a jury of his peers.
There is a presumption in Louisiana courts that a prosecutor uses peremptory challenges in order to obtain an impartial jury. A criminal defendant who claims that he has been denied equal protection through the state’s exercise of peremptory challenges against members of his race must make a prima facie showing that he is a member of a cognizable racial group and that the state has exercised peremptory challenges to remove members of his race from the petit jury. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Thompson, 516 So.2d 349 (La.1987). Additionally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used his peremptory challenges with a discriminatory mind to exclude venire men from the petit jury on account of their race. Batson, 106 S.Ct. at 1723; State v. Baker, 528 So.2d 776 (La.App. 3rd Cir.1988). If the defendant makes this showing, the burden shifts to the state to put forth a racially neutral explanation for challenging those jurors. Batson, supra; State v. Thompson, 516 So.2d at 353; State v. Baker, 528 So.2d at 780.
The record in the instant case does not reflect that the prosecutor exercised his peremptory challenges to exclude blacks from the jury on the account of their race. There were four blacks chosen from the venire during voir dire examination; Ms. Carolyn Marlbrough, Mr. Darrell Harmon, Mr. Donald Ray Henry, and Ms. Marjorie Sinclair. Ms. Marlbrough and Mr. Harmon were challenged and excused by the court for cause. The state exercised only two peremptory challenges. Although these peremptory challenges were used to exclude Mr. Henry and Ms. Sinclair, the record indicates racially neutral reasons for challenging these prospective jurors. Mr. Henry lived in Crowley and had known the defendant for twenty (20) years. Mr. Henry, also, had himself been the victim of a theft. Ms. Sinclair was from Crowley also and knew the defendant. Although she did not socialize with the defendant, Ms. Sinclair socialized often with the defendant’s aunt. These were the only two jurors who knew the defendant, other than Mr. Harmon, who was excused for cause. We find that the apparent reason for challenging these two jurors was not on account of their race, but to obtain an impartial jury. Thus, this assignment of error is without merit.
Accordingly, for the reasons assigned, the defendant’s conviction and sentence is affirmed.
AFFIRMED.

. Although Corumia and the defendant went together to Kinder on September 4, 1986 in order for the defendant to inspect the jewelry store, the store was not burglarized by the defendant.