WARD, Judge.
Albert Smith and Ryan Roberts were convicted of the second degree murder of Melvin Kelly. They appeal their convictions arguing the State’s failure to disclose exculpatory evidence to the defendants violates La. C.Cr.P. art. 718 and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which requires reversal of the jury verdict. Because we find that there was no exculpatory evidence, and therefore no failure or misconduct on the part of the state, we affirm.
The facts in this case are as follows:
*932 On March 3, 1989, at approximately 2:00 a.m., the victim, Melvin Kelly, was shot four times as he was riding a bicycle in the 3100 block of Pleasure Street in New Orleans, Louisiana. Ms. Gail Kelly, the victim’s mother, and the State’s only eyewitness to testify at trial, identified the defendants as the perpetrators of the crime. Ms. Kelly stated that at the time of the shooting she was taking out the trash. She saw Melvin pass by on the bicycle and noted that he was heading towards Metropolitan Street. As he passed, she saw the defendants emerge from the side of a sweet shop on Pleasure Street. The defendants each fired a gun at Melvin. The victim then turned his bike, and the defendants fired again. The victim fell to the ground. Defendant Smith then began running towards Metropolitan Street. Defendant Roberts approached the victim, and shot him two more times. Afterwards, Roberts also ran towards Metropolitan Street. Ms. Kelly went to her neighbor’s house to use the telephone to call the police. Ms. Kelly then proceeded to the crime scene.
Officer Kevin Williams indicated that he arrived on the scene at approximately 2:00 a.m. The officer was originally responding to a call concerning the discharge of a firearm. The officer stated that while he was en route to the scene, he received the call indicating that a shooting had taken place. Officer Williams stated that he had been on the scene four to five minutes when Ms. Kelly approached him and informed him that the victim was her son. Officer Williams stated that he did not observe any weapons near the victim when he arrived on the scene.
Dr. Paul McGarry, the forensic pathologist who performed the autopsy of the victim, testified at trial that the victim died as a result of four gunshot wounds to the head, neck, abdomen, and back. He noted that the gunshot wound to the head was inflicted at close range, approximately two feet. He stated that the victim had a blood alcohol level of .11 and that he found cocaine in the victim’s blood but the amount was not measured.
Officer John Treadway, a firearms examiner with the New Orleans Police Department Crime Lab, testified in regard to the bullets taken from the victim’s body. After examining the bullets, Officer Treadway determined that the bullets came from two different weapons.
Officer Pete Cuadrado, a technician with the crime lab, testified at trial that he was dispatched to the crime scene to recover various items of evidence. Officer Cuadrado stated that he recovered various spent casings, a pistol casing, a pellet, and a blood sample. The officer did not locate any weapons in the area of the crime scene.
On April 27, 1989, the defendants, Albert Smith and Ryan Roberts, were indicted for the second degree murder of Melvin Kelly. Prior to trial, both defendants filed motions for production of exculpatory evidence. The State responded that there was none in their possession. The trial court inspected the States’s file in camera, and held that the State did not have any exculpatory evidence to which the defendants were entitled.
After trial by jury the defendants were found guilty as charged. Both defendants filed motions for a new trial. Following a hearing on the motions on January 31, 1990, the trial court denied the motions. Both defendants appeal. ,
Both defendants focus their appeal on the alleged failure of the State to produce what they believe was exculpatory evidence, alleging an eyewitness, Gregory Jones, gave a statement to the prosecutors that only one person shot Melvin Kelly, a statement which would be exculpatory to defendant Smith, at least. What Jones told the prosecutor is a matter of dispute, because while he was in jail for narcotics’ charges, Jones gave a statement to Ann Wallis, an assistant district attorney, saying he saw Ryan Roberts fire two shots that killed his cousin, Melvin Kelly. Wallis made notes of the interview on a legal pad, but they were not part of the DA’s file. During separate pre-trial interviews with each defense counsel, Jones gave the defense the same information, and told the defense he had given the same story to the State. The defense now claims that the State failed to produce what might be “Brady” material obtained during Walks’ interview with Jones.
*933 Based on those allegations, the trial court conducted a hearing, and heard testimony from the prosecutors and from Gregory Jones. That testimony is summarized below.
Before trial, Ms. Ann Wallis, the junior assistant district attorney on the case, interviewed Gregory Jones while he was in Parish Prison serving time for possession of narcotics. At that time, Smith and Roberts were also in Parish Prison, awaiting trial on these murder charges. Jones told Wallis he was a witness to the murder of Melvin Kelly, his cousin. He said he witnessed Roberts fire two shots, killing Kelly. Wallis made notes of what Jones said on a legal pad.
Also, before trial, counsel for defendants each interviewed Gregory Jones and obtained the same statement from him. Believing the State had access to the same information, and believing it to be exculpatory, they filed a motion to produce Brady material. When the prosecution denied possessing Brady material, defense counsel assumed Gregory Jones told them something different from what he told the prosecutors.
On the day of trial, at a bench conference, before the jury was brought into court, defense counsel again asked if there was any Brady material. Prosecutors answered there was none. Counsel then inquired as to whether the prosecution had a statement from Gregory Jones. Prosecutors said they did, and told defense counsel the gist of Jones’s statement. Jones, although subpoenaed by the prosecution, was not called to testify. He was in Parish Prison at the time, equally available to the prosecutors and defense counsel.
At the request of counsel, the trial court reviewed the State’s file and ruled there was no Brady material to be disclosed. It is unclear whether Wallis’ notes were in the file at that time, but it is clear that when the motion for a new trial was heard the notes were not in the file.
At the hearing for a new trial Gregory Jones testified that he told Ms. Wallis that both defendants, Ryan Roberts and Albert Smith, killed Melvin Allen. This testimony is contrary to what Jones told both prosecutors and defense counsel before trial. He also said that he was subpoenaed but not called to testify. Ms. Wallis said she did not call him because she did not believe him when he said he only saw one person shoot Melvin Allen.
It is unclear what defense counsel claims is Brady material. If it is Wallis’ notes of Gregory Jones’ statement to her, neither the trial court, nor this Court believes that statement was exculpatory. Ms. Wallis testified:
I don’t think that I found it inconsistent, if I recall Gregory Jones, I don’t know if I recall him seeing the entire incident. He indicated that there could have been two subjects, if I recall correctly and I wish I had my notes to be able to reflect my memory better, but he indicated that he got there, I believe, on the last two shots and the last subject to do the shoots was seen by him. (Tr. pp. 14 and 15, motion for new trial).
Defense counsel contends that Jones gave a statement to the State in which he said only one person did the killing. But, during the motion for a new trial prosecutors testified differently, and, in spite of skillful questioning by defense counsel, they steadfastly maintained that they understood Gregory Jones to say he arrived after Kelly had been first shot, he heard only the last two shots, and “he only named one”. Thus, Defense counsel has not shown that the State possessed exculpatory evidence. If anything, this type of testimony by Jones would have served to further‘corroborate the state’s witness, Kelly’s mother, and it most certainly is not exculpatory Brady material.
The defense makes an issue about the lost notes of Ms. Wallis’ interview with Gregory Jones. The testimony shows that they are lost, not as a result of prosecutorial misconduct, but in spite of the prosecutor’s desire to use them to refresh her memory in the hearing on the motion. Most importantly, we do not believe the notes implied that Gregory Jones had given the prosecutors exculpatory evidence. Instead, this Court believes prosecutors testimony is credible — they chose not to call Gregory Jones to testify, first, because they did not believe him, and second, because he was untrustworthy and in jail with both *934 defendants herein at the time of trial. The defense counsels would later enthusiastically agree with this opinion after they called Jones to testify in the motion hearing, (Tr. p. 55, motion for new trial) because at that hearing Jones testified that both defendants shot Kelly.
If we misinterpret what counsel contends is Brady material, that is, if it was the expected testimony of Jones and not the prosecutor’s notes, we reach the same result. This is so even if we accept the defense contention that Jones would give exculpatory evidence by testifying he saw only one person, Roberts, shoot Kelly. Both defense counselors acknowledge that they had access to the same witness, Gregory Jones. Jones gave a statement to them before trial and told them he had also given a statement to the prosecutors. (Tr. p. 53, motion for new trial). Therefore, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) does not apply. In State v. Guillory, 544 So.2d 643 (La.App. 3 Cir.1989), the Third Circuit has held “Where the criminal defendant has ready access to the alleged exculpatory evidence but fails to procure that evidence himself, there is no Brady violation.”, citing State v. Arnold, 466 So.2d 520 (La.App. 3 Cir.1985), writ denied, 470 So.2d 124 (La.1985); Matheson v. King, 751 F.2d 1432 (5th Cir.1985), cert. denied, 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986). Brady. has even less applicability in this ease where the criminal defendant knew of the alleged Brady material, and could readily have used it. As we noted above, Jones was available to testify either for the State or the defense. If Gregory Jones’s anticipated testimony was exculpatory, then Defense counsel should have called Jones to testify at the trial.
AFFIRMED.
ARMSTRONG, J., concurs with reasons.
PLOTKIN, J., concurs in part and dissents in part.