SEXTON, Judge.
The defendant, Willie Earl Hollings-worth, was charged by bill of information with attempted second degree murder and convicted after trial by jury of attempted manslaughter. Defendant was sentenced to ten and one-half years at hard labor, the maximum punishment for the offense. Defendant appeals, raising three assignments of error. Finding each assignment of error meritless, we affirm.
FACTS
On October 13, 1987, Melda Taylor, an employee of Wal-Mart in Jonesboro, Louisiana, was employed as a receiving manager. At about 12:00 p.m., Ms. Taylor went out the back side door of Wal-Mart to tell the people who worked with her to get ready to go to lunch. As she turned and proceeded to go back inside, her back faced some woods near Wal-Mart. She heard a popping sound and felt something hit her in her back. She felt the sensation more than once. Ms. Taylor sat down, then got back up. She put her hand on her chest and saw blood on her hand. Ms. Taylor told the people at the scene that she had been shot. Upon arrival at Jackson Parish Hospital she was found to have three gunshot wounds.
*664 Chief McKinney of the Jonesboro Police Department was assigned to investigate the shooting. After arriving at the scene, Chief McKinney determined that the shots had come from a wooded area to the east of Wal-Mart. Chief McKinney immediately called for all available units to surround the wooded area near Wal-Mart. One of the areas surrounded was the Walker Road area on the south side of the woods.
Chief Roden, Chief of Police, Village of North Hodge, had also responded to the call. As Chief Roden proceeded down Walker Road, he saw a Buick at the New Hope Baptist Church parked partially in the driveway and partially off the driveway. Chief Roden stopped for three to five minutes and ran a license check on the vehicle. He heard deputies on a walkie-talkie say that the tracking dog in the woods had picked up a trail that was leading the deputies east into the woods. Because Chief Roden believed that any suspect in the area would have to pass him, he drove slowly along Walker Road looking into the woods and the surrounding area. As he came over a hill, he caught a glimpse of a person coming out of a ditch. This person appeared to have come from the nearby woods. Chief Roden called Chief McKinney, who advised Roden to observe the person until he could assist Roden.
The suspect came out of the ditch, walked across the road and proceeded west towards Jonesboro. As the suspect walked, Chief Roden followed behind him driving slowly, maintaining a distance of 35 or 40 yards. Chief Roden testified that he believed that the suspect saw the police vehicle. The suspect walked up to the Buick, stopped momentarily and then went back across the road toward the Howard Quarles residence. The suspect went into the house and Chief Roden called for backup. Chief Roden went inside the home and requested the suspect to step outside. The suspect was the defendant.
Trooper Easley who had responded to Roden’s call for backup administered Miranda warnings to the defendant shortly after the defendant’s exit from the Quarles house. A short time later, Chief McKinney called telling Easley and Roden to hold the suspect. Defendant was handcuffed. After McKinney arrived, Roden, Easley and McKinney noticed vegetation on defendant’s cap and in his hair. They also noticed what appeared to be fresh scratches on defendant’s forehead and arms. Trooper Easley noticed that defendant was sweating heavily, although the temperature was only 56 degrees. Chief McKinney, upon his arrival, noticed that defendant was breathing heavily.
Defendant was requested to remove his hat, jacket and shoes. Defendant explained to Trooper Easley that he had scratched himself while cutting wood.
Chief Roden left the residence to search for a weapon which may have been discarded. Walter Harper, a resident of Walker Road, saw Chief Roden and asked him what he was looking for. Chief Roden explained that he was looking for a weapon. Chief Roden went back for his vehicle. Upon returning to the area near the woods, Harper showed Roden a rifle lying in the ditch. The rifle was found in the ditch within a few feet of the area where defendant had been initially seen by Chief Ro-den. No prints were found on the rifle.
After Chief McKinney took defendant into custody, he performed a gun residue test on him. The rifle contained twelve .22 caliber, Federal bullets. The Federal bullets have lead barium and antimony which is somewhat unique. The residue test detected these chemicals on defendant’s hands. Defendant explained that he had mixed gunpowder with dog food to explain the presence of the residue on his hands. At trial, the state's expert discounted this explanation by defendant. Also, slugs found at the Wal-Mart property were determined by ballistics tests to have been fired from the rifle found in the ditch.
Tracks were found in the woods with similar characteristics to defendant’s tennis shoes.
Further, Melda Taylor, on behalf of Wal-Mart, had previously issued a shoplifting complaint against defendant that had resulted in his arrest. Defendant was sched *665 uled to appear in court on that charge on the day after the shooting.
MOTION TO SUPPRESS
ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant asserts that the trial court erred in failing to grant defendant’s motion to suppress.
Defendant filed a motion to suppress on September 13, 1988. Trial was scheduled for September 19, 1988. The motion to suppress was heard on September 15,1988. Defendant sought to suppress:
1) Oral statements of the defendant;
2) Photographs taken of the defendant;
3) Any type of physical evidence removed from defendant, particularly, gunpowder residue;
4) Bullets remaining in the gun; and
5) Reports of the Jackson Parish Hospital on treatment or observation of the defendant made on October 13, 1987, or any testimony relating thereto.
The trial court heard and denied the motion to suppress regarding the oral statements of defendant. The motion to suppress regarding Items 2 through 5 was denied because the motion was not timely filed.

A.Motion to Suppress Oral Statements of Defendant

Appellant argues that the trial court erred in denying the motion to suppress alleged statements by defendant. His claim centers around the voluntariness of the statement made regarding his assertions that he was cutting wood in the area.
Before a confession or inculpatory statement can be introduced into evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menace, threats, inducements of promises. LSA-C.Cr.P. art. 703 D; LSA-R.S. 15:451. It must also be established that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Green, 443 So.2d 531 (La.1983); State v. Gaskin, 412 So.2d 1007 (La.1982).
Trooper Easley arrived shortly after the defendant exited the Quarles residence at Chief Roden’s request. Trooper Easley first showed the defendant his watch and asked the defendant to state the time in order to determine the defendant’s competency. The defendant correctly did so. Easley then advised the defendant of his Miranda rights, and the defendant told Trooper Easley on three separate occasions that he understood these rights. Trooper Easley had also advised the defendant of the reason for his detention. While it is unclear whether the defendant’s statement about chopping firewood was made prior to being handcuffed or shortly thereafter, it is abundantly clear that he had received appropriate Miranda warnings prior to making any statement.

B.Motion to Suppress Other Evidence

The trial court ruled that the motion to suppress the remaining seized items was untimely.[1] The defendant asserts that the trial court erred in finding that these items were presented untimely.
LSA-C.Cr.P. Art. 703 provides, in pertinent part:
Art. 703. Motion to suppress evidence
C.A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
LSA-C.Cr.P. Art. 521 provides:
Art. 521. Time for filing of pretrial motions
Pretrial motions shall be made or filed within fifteen days after arraignment, *666 unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
Defendant attempted to show that the opportunity did not exist due to a late filing of answers by the state. The trial court denied the motion to suppress finding that it was not timely filed within the provisions of LSA-C.Cr.P. Art. 521. Our review of the record indicates that, as the trial judge found, defendant was given sufficient notice by the state of its intent to use Item No. 2 (photograph) and Item No. 3 (physical evidence taken from the defendant) in its answers to defendant’s bill of particulars which was filed on November 19, 1987. Additionally, review of the record indicates that the defendant was informed of the existence of this evidence at the preliminary examination held July 8, 1988. Additionally, as to Item No. 4 (the bullets found in the gun), the trial court found that the state had given notice of its intent to use these bullets at the July 8 preliminary examination. Clearly, the record indicates that at the preliminary examination, the police officers were questioned about the evidence found and indicated that three bullets were retrieved. Additionally, the record indicates that the defendant received notice/ of the intent to use the three .22 caliber bullets recovered from the crime scene by the state in the answer to application for a bill of particulars filed November 19, 1987.
Finally, as to Item No. 5 (reports of the Jackson Parish Hospital on treatment or observation of the defendant made on October 13, 1987, or any testimony relating thereto), the trial judge found that defendant received notice of the existence of this item at the preliminary examination held on August 18, 1988.[2] The transcript of the preliminary examination reveals that mention was made of the fact that Mr. Holl-ingsworth was transported to Jackson Parish Hospital where he was examined to document the scratches on him.
The provisions of Article 521 indicate that a pre-trial motion shall be filed within fifteen days after arraignment unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate. Arraignment in this case was held on November 3, 1987. The defendant filed his motion to suppress on September 13, 1988, only six days before the trial. Clearly, defendant was given notice of the intent to introduce the rifle, several bullets remaining in the rifle, three .22 caliber bullets recovered from the crime scene, and the gunshot residue in the state’s answer to the application for a bill of particulars filed on November 19, 1987. The record additionally indicates that the defendant was fully informed of the existence of photographs as well as reports of the Jackson Parish Hospital on July 8, 1988, the date of the preliminary examination. Nevertheless, the motion to suppress was not filed until some two months after the notice of these facts. Defendant has offered little to explain the delay. Based upon these circumstances, we find that the trial court did not abuse its discretion in determining that the defendant failed to show valid cause for the delay in filing the motion to suppress.
Moreover, we observe that it clearly appears that all of the items, other than the statement which was the object of the motion to suppress, were obtained as a result of a lawful arrest.
Trooper Easley had knowledge of facts sufficient to make an arrest. Trooper Eas-ley knew that there had been a shooting at the nearby Wal-Mart and that the probable location of any suspect was the woods. Trooper Easley had been searching for a suspect and monitoring the situation from his radio. He heard Chief Roden’s statements and responded to Roden’s call for assistance. Trooper Easley had heard over the radio that a suspect was in the woods. *667 Trooper Easley noticed vegetation and scratches on the defendant as if he had been running through the woods. The scratches appeared to be fresh.
Additionally, defendant was sweating profusely, and the temperature was 56 degrees Fahrenheit. Initially, it was Trooper Easley’s intention to hold defendant for the investigating officer, Chief McKinney. However, after a transmission on the radio about defendant being needed for questioning concerning this incident, defendant appeared to Trooper Easley to start fidgeting and to become very nervous. Defendant looked over his left. shoulder toward the wooded area. At this point, Trooper Eas-ley decided to handcuff defendant. All of these facts and circumstances gave Trooper Easley sufficient knowledge to establish probable cause for the arrest of the defendant.
Thus, with respect to this portion of the motion to suppress, we determine that the trial court ruling that the motion was untimely filed was correct. We furthermore observe that the record clearly shows that these items were obtained subsequent to a valid arrest. This assignment of error lacks merit.
SUFFICIENCY OF THE EVIDENCE
ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant asserts that the evidence was insufficient to support his conviction of attempted manslaughter. More specifically, defendant asserts that the evidence was insufficient to establish that he was the perpetrator of the offense.
The defendant was found guilty of attempted manslaughter in violation of LSA-R.S. 14:27 and 14:31. LSA-R.S. 14:27 provides in pertinent part:
§ 27. Attempt
A.Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B, Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime, and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
LSA-R.S. 14:31 provides as follows:
§ 31. Manslaughter
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
*668 Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
A reviewing court may not disregard its duty under due process of laws as interpreted by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), simply because the record contains testimony which tends to support every fact necessary to constitute the crime. The actual trier of fact’s rational credibility calls, evidence-weighing and inference-drawing are preserved through the requirement that upon judicial review, all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the state. State v. Mussall, 523 So.2d 1305 (La.1988). Where circumstantial evidence is involved, as in the instant case, a stricter standard of review than the more general reasonable juror’s reasonable doubt formula is not applied. However, we are to be cautious of the need for careful observance of the usual standard when considering the facts inferred from the circumstantial evidence. State v. Captville, 448 So.2d 676 (La.1984).
Specific intent to kill may be reasonably inferred from the intentional use of a deadly weapon and the firing of three shots into the back of the victim. See State v. Odom, 511 So.2d 1214 (La.App. 2d Cir.1987), writ denied, 515 So.2d 446 (La.1987).
Additionally, the evidence established that the shots which wounded Mrs. Taylor were fired from some woods behind Wal-Mart. Defendant was seen exiting those woods, and a gun was found near a location where defendant exited the woods. A gunshot residue test performed on defendant revealed the presence of gunshot residue which had strikingly similar characteristics with the bullets found in the abandoned gun. The state’s expert testified that the gunshot residue would not be found on the defendant’s hands as a result of his mixing gunpowder with dog food as he claimed. This testimony also established that the victim was shot by a small caliber weapon. Bullets found near the doorway where the victim was shot were determined to have been fired from the gun found in the ditch.
This evidence, considered in conjunction with defendant’s appearance (including the presence of debris from the woods, his sweating and breathing heavily after exiting the woods, and his inconsistent statements explaining his presence in the woods) is sufficient for a rational fact finder to have found defendant guilty of attempted manslaughter beyond a reasonable doubt. Therefore, this assignment of error is meritless.
EXCESSIVE SENTENCE
ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant asserts that the trial court imposed an excessive sentence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C. Cr.P. Art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981).
Second, the reviewing court must determine whether the sentence imposed is too severe given the circumstances of the ease and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 *669 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
Although a pre-sentence investigation was not ordered, the trial court noted that it had considered the nature of the offense and the mitigating factors brought out during the trial. The trial court noted that defendant was 32 years of age and had dependents. The trial court also noted that defendant had a limited criminal history and had a prior shoplifting charge.
The trial court considered the nature of the present offense and that defendant’s action both threatened and caused harm to the victim. Defendant knew that such would be a consequence of his action. The trial court also found no grounds tending to excuse the instant offense. Defendant had simply waited to shoot an unsuspecting victim. The trial court also considered that the victim did not induce or facilitate the commission of the present offense. Additionally, the victim had not been compensated for the present injuries. The trial court also considered that the circumstances were likely to recur since the defendant indicated a willingness to resort to violence in order to prevent testimony involving criminal charges which had been brought against him. The trial court noted that there would be hardship incurred by defendant’s family, but this would be no more excessive than any other hardship felt by those who had family members who were incarcerated. The trial court concluded that defendant was in need of custodial environment. The trial court also considered that a lesser sentence would deprecate the seriousness of the offense because:
1) Defendant had hidden in the woods and shot an unsuspecting victim;
2) The defendant’s action was a threat to the judicial process because the victim was to be a witness against defendant on the day after the shooting; and
3) The trial court concluded that such actions by defendant, if carried to their logical conclusion, could wreck our very society.
The factors listed above demonstrate the trial court’s adequate compliance with LSA-C.Cr.P. Art. 894.1. Additionally, in light of the planned nature and seriousness of the offense, along with the threat that defendant’s actions posed to the judicial process, we cannot find the sentence imposed excessive in spite of the fact that defendant is a first felony offender.
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The defendant perfected a writ application on this issue which was denied by us. State v. Willie Earl Hollingsworth, No. 20,496-KW (La.App. 2d Cir. Sept. 16, 1988).

. The minutes indicate that the preliminary examination was held on two separate dates: July 8 and August 18. The transcript only refers to July 8.