BARRY, Judge.
The defendant was charged with attempted second degree murder, La.R.S. 14:30.1(14:27). A jury found him guilty of attempted manslaughter, La.R.S. 14:31(14:27) and he was sentenced to ten years at hard labor. The defendant’s one assignment questions the sufficiency of the evidence. We affirm.
At approximately 9:00 p.m. on the night of June 24, 1988, Robert and Wayne Bou-dreaux, Virginia Tilton and her ten year old daughter left Venezia's Italian Restaurant on North Carrollton Ave. in New Orleans. Wayne walked Ms. Tilton and her daughter to her nearby car, while Robert proceeded to Wayne’s car which was parked around the corner on Iberville Street. Robert was unable to start Wayne’s car, so Wayne drove Ms. Tilton’s car to help Robert start the vehicle. As Wayne turned from Car-rollton onto Iberville St. the defendant stepped off the curb in front of the ear. Both Ms. Tilton and Wayne testified that the car was moving very slowly and that Wayne stopped when he saw the defendant. Wayne estimated that he stopped about ten to twenty feet from Tauzier. The defendant yelled that pedestrians have the right-of-way. He cursed and threatened to break the car windows before walking away toward the Red Door Lounge.
No parking places were available on Iberville St. so Wayne parked Ms. Tilton’s car on Carrollton Ave. near the Iberville corner. As Wayne walked toward his car the defendant and another man approached and the defendant began cursing. Wayne told the defendant to “get lost,” that his car wouldn’t start, and he wasn’t interested in “dealing with him.” Wayne tried to start the car while Robert worked under the hood. The defendant and his friend returned to the corner where Ms. Tilton was waiting in her car with her daughter. Ms, Tilton heard the defendant say to his friend, “The boy over there is stranded and his wife and his kid’s in the car, and I could kill them both.”
The defendant then walked toward the disabled vehicle. Wayne testified that he heard cursing and saw the defendant rapidly cross the street toward the car. Wayne and the defendant began fighting and moved in the direction of the Red Door Lounge. Wayne’s face was cut and he bled profusely.
*16 Robert intervened and told Wayne that the defendant had cut his face with a weapon. Wayne testified that he looked at the defendant and saw a shiny metal object in his hand. When the defendant advanced on Wayne, Robert pushed him away and stepped between them. Robert did not attack the defendant who swung at Robert and stabbed him in the chest. He pulled the weapon out and “backed off” across the street. The weapon was not found.
Robert and Wayne testified they did not realize the seriousness of the wound because the entrance hole was a small puncture. Wayne entered the Red Door Lounge where Ms. Tilton was calling the police.
Charles Winnows, manager of the Red Door Lounge, testified that on the night of June 24 he saw the defendant fighting with Wayne while Robert watched. Winnows brought Ms. Tilton and her daughter into the bar for safety and told her to call the police. Winnows then saw the defendant talking with Robert. Wayne entered the bar and went into the bathroom. When Winnows looked outside again, Robert had passed out on the street corner and the defendant was standing on the other side of Carrollton Ave. Winnows testified that he knew the defendant because he was a regular customer of the lounge and had repaired the bar’s air conditioner.
Winnows called the police and told them that there were two people injured and an ambulance was needed. Robert was taken to Charity Hospital where he underwent open-heart surgery for a stab wound which penetrated his heart. Dr. David Rau, surgeon, testified that the wound was life-threatening. The defendant left the scene before police arrived, but was arrested across the street at the N & N Bar early the next morning.
ASSIGNMENT OF ERROR
The defendant argues that the State did not present sufficient evidence to allow a reasonable trier of fact to find beyond a reasonable doubt that he had the specific intent to kill Robert Boudreaux.
The defendant was convicted of attempted manslaughter in violation of La.R.S. 14:27 and 14:31.
La.R.S. 14:27 provides in part:
A. Any person who, having a specific intent to commit a crime, does or admits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
* * * * * *
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
******
La.R.S. 14:31 provides in pertinent part: Manslaughter is: 1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed;
******
Specific intent to commit a crime is an element of an attempted offense. La. R.S. 14:27 A. A specific intent to kill is required to support an attempted manslaughter conviction. State v. Butler, 322 So.2d 189 (La.1975); State v. Vanvorst, 505 So.2d 123 (La.App. 4th Cir.1987), writ denied, State ex rel. Vanvorst v. Donnelly, 533 So.2d 12 (La.1988); State v. Cass, 514 So.2d 589 (La.App. 4th Cir.1987).
Specific intent is: “That state of mind which exists when the circumstances *17 indicate that the offender actually desires the prescribed criminal consequences to follow his act or failure to act.” La.R.S. 14:10. Since specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of defendant. State v. Graham, 420 So.2d 1126 (La.1982). The trier of fact is to determine the requisite intent in a criminal case. State v. Huizar, 414 So.2d 741, 751 (La.1982).
In reviewing whether the evidence supports a trier of fact’s decision to convict, the court should review the evidence in the light most favorable to the prosecution and must determine if a rational trier of fact could have found defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State v. Jarman, 445 So.2d 1184, 1189 (La.1984).
The jury’s determination that defendant was guilty of attempted manslaughter is clearly supported by the evidence. The defendant started the fight with Wayne Boudreaux. Before the fight Ms. Tilton heard the defendant tell his companion that he could kill Ms. Tilton and her daughter. Robert Boudreaux did not attack the defendant. When he intervened to get Wayne away, the defendant stabbed him in the heart.
A rational trier of fact could have easily found that the defendant had a specific intent to kill Robert Boudreaux and that the State had proven the essential elements of the crime of attempted manslaughter beyond a reasonable doubt.
The conviction and sentence are affirmed.
AFFIRMED.