ARMSTRONG, Judge.
Defendant, along with Joseph Jamison, was indicted for the second degree murder of Elton Rainey on August 19, 1988. Defendant pleaded not guilty and his motions to suppress the evidence and his confession were denied. Following a bench trial, defendant was found guilty of manslaughter. He was sentenced to twenty-one years at hard labor. Pursuant to a multiple bill filed by the State, the trial judge set aside defendant’s original sentence and sentenced him to twenty-one years at hard labor with the first half of the sentence to be without benefit of probation or parole and the entire sentence to be without benefit of good time and court costs of $159.00 or an additional thirty days in default of payment thereof.
On August 19, 1988 at about 9:30 p.m., Officer Joseph Teffaro answered a call in the 3300 block of Third Street. When he arrived, he found the body of Elton Rainey lying on the sidewalk in front of 3313 Third Street. Rainey had been shot four times.
Detective John Reynolds investigated the homicide. Inside Rainey’s residence, which was an apartment towards the rear of 3313 Third Street, the police found blood on the wall just inside the entrance, marijuana cigarettes and seeds, and a .38 caliber pis *613 tol under a sofa cushion in the living room. The police also found a black baseball cap, a dollar bill, a partial bullet casing and blood stains in the alleyway leading to Rai-ney’s apartment.
On the following day, Detective Reynolds took a statement from Rainey’s ten year old son Elton Husband. Elton stated that a man he knew as “Joe Joe” Jamison shot his father inside the apartment. Elton further stated that his father ran out of the apartment and that Jamison shot him again in the alleyway. Elton told Reynolds that his father ran to the gate where there was another man that he did not know and that his father fought with both Jamison and the other man before he collapsed and died. Elton picked Jamison’s picture out of a photographic lineup. Elton gave substantially the same testimony before the grand
jury-
However, at trial, Elton testified that it was the other man and not Jamison who came into the apartment and shot his father. He testified that his father ran outside and the other man followed his father and shot him again. Elton saw Jamison at the gate while his father and the other man struggled over the gun. According to Elton, when the gun fell to the ground, Jami-son picked it up and shot his father. Elton testified that he heard a total of five gunshots.
Elton was later recalled as a witness, and he testified that the other man appeared to be the defendant. Elton had previously testified that the other man had a dark complexion, but he could give no other description.
James Bell, the great uncle of Jamison, testified that when he first heard the shots from Rainey’s apartment, Jamison was at a grocery store on the corner. Darryl Tyrone Jamison, who was Jamison’s uncle, testified that he and Jamison were across the street from Rainey’s apartment sitting on the front steps of Jamison’s grandmother’s home when he first heard shots at Rainey’s apartment. The uncle stated that Jamison then went over to Ramey’s to see what was going on. The uncle said that he saw defendant, whom he knew as “Ali,” wrestling with Rainey, whom he knew as “Blue,” over a gun. The uncle went inside the grandmother’s house after that and saw nothing else.
Jamison testified that he was using the telephone at the corner grocery when he heard a shot. He went to his grandmother’s house and sat with his uncle when he heard another shot and then saw defendant and Rainey struggling. Jamison testified that Rainey was hitting defendant in the head with a pistol and that defendant’s hand was bleeding. Jamison tried to break up the fight, but Rainey pointed his gun at him. Jamison, who had a gun, shot Rainey twice. Jamison testified that as he walked away, he heard two more shots and then saw defendant with the gun. He took defendant to the hospital and disposed of his gun and the one taken from Rainey by James.
Defendant testified he had gone to Rai-ney’s apartment to buy a joint. After doing so, he went into Rainey’s backyard “to take a leak,” and this angered Rainey. Rainey pulled out a gun and hit defendant with it as defendant walked through the alleyway. Defendant tried to grab Rai-ney’s arm to get the gun, but the gun discharged resulting in defendant’s getting shot in the hand. He testified that he and Rainey then struggled over the gun in the alleyway, and that he called for help. Jam-ison arrived and shot Rainey twice. Rai-ney dropped his gun, and defendant picked it up. Defendant testified he saw Rainey pull a shiny object out his pocket and that he then shot Rainey once. He had Jamison drive him to the hospital where he stated that his girlfriend had stabbed him in the hand.
Expert testimony was offered by Dr. Gilchrist, a forensic pathologist, who testified that Elton Rainey sustained four gunshots. Two exited the body and two bullets were recovered from the body. The shots to the chest and abdomen damaged several organs and caused the death. Alan Tidwell, a firearms expert, testified that the two recovered bullets were shot from the same .38 caliber gun and that a copper jacket found on the scene did not match the *614 gun found in the apartment or the bullets recovered from the body.
A review of the record reveals no errors patent except as set forth in defendant’s second assignment of error.
In his first assignment of error, defendant complains the trial court failed to question him as to his knowing and intelligent waiver of his right to trial by jury. He claims the record is devoid of any indications that the trial judge informed him of his right to a jury trial.
At the commencement of defendant’s trial, defense counsel initially indicated that defendant elected to be tried by jury; but after an off the record discussion, defense counsel stated that defendant wished to be tried by the trial court. The following transpired:
THE COURT:
As to Demetrius Andre James?
MR. MELTON:
He wishes to be tried by the Court, your Honor.
THE COURT:
Come on up, Mr. James. Mr. Melton has just indicated that you wish — He indicates on behalf of you that you wish to waive your right to a trial by jury. That is, 12 people would have to hear your case. Ten of them would have to agree upon any one verdict. You can waive your right to a trial by jury and let me decide your case. I want you to talk to Mr. Melton. Make sure you discuss that with him. Make your decision for me so that I know that it is your decision, something that you discussed with Mr. Melton. (DEFENDANT CONFERS WITH MR. MELTON)
THE DEFENDANT:
Judge trial.
THE COURT:
You talked to Mr. Melton about that and that’s what you wish to do?
MR. MELTON:
Yes.
THE COURT:
Please have a seat on the bench.
Except for offenses punishable by death, a defendant may-knowingly and intelligently waive his right to trial by jury and elect trial by the district judge. La.C. Cr.P. art. 780. However, a waiver of jury trial cannot be presumed. State v. McCarroll, 337 So.2d 475 (La.1976). There is no absolute rule that a jury waiver is ineffective unless the record reflects the trial judge personally informed the defendant of his right to a jury trial. State v. Page, 541 So.2d 409 (La.App. 4th Cir.1989), writ denied 548 So.2d 323 (La.1989). However, the Supreme Court stated that the preferred practice would be for the trial judge to advise the defendant personally of his right to trial by jury and to require the defendant to waive that right either orally or in writing. State v. Wilson, 437 So.2d 272 (La.1983). An effective waiver has been found where the waiver was made by defense counsel because the record showed the defendant understood the right to jury trial and still consented to the waiver. See State v. Kahey, 436 So.2d 475 (La.1983); State v. Phillips, 365 So.2d 1304 (La.1978), cert. den. Phillips v. Louisiana, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979).
But in State v. Page, supra, this court found the waiver by the defendant’s attorney did not constitute a knowing and intelligent waiver by the defendant. There was no evidence showing that the attorney advised the defendant of his right to trial by jury or that the defendant consented to the waiver.
A reading of the colloquy between the trial judge, defendant and his counsel does not support defendant’s claim that he did not make a knowing and intelligent waiver of his right to trial by jury. Defendant was aware of his right to a jury trial when he initially elected trial by jury. He personally consented to the waiver subsequently made by his attorney after he discussed the matter with his counsel. Defendant has not shown that his waiver was not knowingly and intelligently made. This assignment of error is without merit.
In his second assignment of error, defendant complains that the trial court erred in imposing an excessive sentence in that the *615 sentence was imposed without benefit of parole or good time and that it imposed additional jail time in default of payment of court costs.
As to the denial of parole eligibility, the sentence for a conviction of manslaughter does not prohibit parole eligibility. La. R.S. 14:31. Although defendant was adjudicated a second offender, La.R.S. 15:529.1 does not prohibit parole eligibility. But La.R.S. 15:574.4 A(l) provides that upon conviction of a second felony offense, a defendant is eligible for parole after serving one-half of his sentence. This statute is part of the section on guidelines used by the Department of Corrections in determining if parole is appropriate, and it does not give the trial court the authority to impose sentence without benefit of parole. State v. Knight, 548 So.2d 1276 (La.App. 4th Cir.1989); State v. Bell, 543 So.2d 965 (La. App. 4th Cir.1988). Thus, his sentence is illegal and must be amended to delete the denial of parole eligibility for the first half of defendant’s sentence.
Defendant’s sentence was also imposed without benefit of good time. In State v. Melancon, 536 So.2d 430 (La.App. 4th Cir.1988), this court held that the trial court lacked the discretion under La.R.S. 15:571.3 to deny good time eligibility even though the defendant was ineligible for good time credits under that statute. Hence, the trial court erred in imposing defendant’s sentence without benefit of good time eligibility, and this portion of the sentence must be deleted.
The trial court further erred in sentencing defendant to an additional thirty days in jail in default of payment of court costs of $159.00. At trial and on this appeal, defendant has been represented by counsel appointed from the Orleans Indigent Defender Program (O.I.D.P.). If it is necessary to appoint counsel from O.I.D.P. to represent a defendant, that defendant is to be considered indigent for purposes of sentencing. State v. Huffman, 480 So.2d 396 (La.App. 4th Cir.1985). An indigent defendant cannot be subjected to additional imprisonment because he is unable to pay a fine or court costs. State v. Garrett, 484 So.2d 662 (La.1985); State v. Dillon, 511 So.2d 850 (La.App. 4th Cir.1987). Thus, this provision in defendant’s sentence must be deleted.
Accordingly, defendant s conviction is affirmed and his sentence amended to delete the denial of parole and good time eligibility and the imposition of additional jail time in default of payment of court costs, and as amended, affirmed.
AFFIRMED AS AMENDED.