586 So.2d 595 (1991)
STATE of Louisiana, Appellee,
v.
Oza T. OTIS, Appellant.
No. 22579-KA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1991.
Writ Granted in Part with Order; Denied in Part November 15, 1991.
*598 Indigent Defender Office by John M. Lawrence, Edward Jenkins, Jr., Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Paul J. Carmouche, Dist. Atty., Howard M. Fish, Tommy J. Johnson, Asst. Dist. Attys., for appellee.
Before SEXTON, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
Defendant, Oza T. Otis, was charged by indictment with one count of second degree murder, in violation of LSA-R.S. 14:30.1, and two counts of attempted second degree murder, in violation of LSA-R.S. 14:27 and 14:30.1. Following trial by jury, defendant was found guilty of one count of manslaughter and two counts of attempted manslaughter. He was subsequently adjudicated a second felony offender and was sentenced, with credit for time served, to 25 years hard labor on the count of manslaughter and 12½ years each on the two counts of attempted manslaughter, said sentences to run concurrently and subject to the laws provided.
Defendant now appeals reserving ten assignments of error, seven of which are actually briefed, wherein he claims the trial court erred in failing to sustain his challenges for cause of several prospective jurors, in failing to sustain his objection under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when the state established a pattern of using its peremptory challenges primarily to strike potential black jurors, in allowing into evidence a diagram produced by the state although the defense was never provided a copy, and in denying his motion for mistrial when the jurors saw him being escorted across the hall in shackles. Defendant also claims that the trial court erred in denying his motion for new trial. In his final assignment of error, he alleges the trial court erred in imposing excessive sentences. Finding no merit to these assignments of error, we affirm.

*599 FACTS
In the early morning hours of July 3, 1988, a confrontation occurred between defendant and Juster Collins, the decedent, at Collins' home.
The decedent's nephew, Jerry Wayne Moore; Delores Norwood; James Woodard, Jr.; defendant, Oza Otis; and the decedent had gathered at 1935 Weinstock in Shreveport, the home of the decedent, where they had been visiting together, eating and drinking beer or other alcoholic beverages throughout the day.
A discussion between Moore and defendant, regarding who would be the first to go jogging the next morning at Booker T. Washington High School, resulted in a $5 bet. A dispute arose over the bet and defendant wanted his money back from the decedent. The decedent then asked defendant to leave his house. Delores Norwood, who had been asleep in the front room, was awakened by the resulting commotion.
While defendant remained seated, Collins went to the back of the house and returned with a .22 caliber rifle. Collins raised the rifle and hit Otis on the head twice. The rifle broke and Collins began shoving Otis out the door. Moore, witnessing the incident, testified that Collins declared, "Wayne, he is reaching." Shots were fired. Collins retrieved his .38 caliber handgun from his pocket and fired. Collins fell to the floor. At this point, Norwood got up to see about him. Additional shots rang out, coming through the door and window. A bullet grazed Norwood's head, injuring her. James Woodard, asleep on the couch, was shot in the leg. Collins died as a result of the wounds inflicted by the shooting.
Following the shooting, Otis went to the home of his brother, Don Otis, a Shreveport police officer on sick leave following a motorcycle accident, seeking a change of clothing. Defendant further insisted his brother call the police station to find out what had happened on Weinstock Street. Officer Otis testified at trial that his brother, defendant, admitted that he had been involved in an argument, was hit over the head with a rifle, and had shot at a house seven or eight times.
Defendant was subsequently arrested and indicted for the second degree murder of Juster Collins and the attempted second degree murder of Delores Norwood and James Woodard, Jr.

DISCUSSION

Argument 1 (Assignments of Error Nos. 2, 3, 5)
In Assignments of Error Nos. 2, 3, and 5, defendant alleges that the trial court erred in failing to sustain defendant's challenges for cause as to prospective jurors Harvey W. Wilkening, Clifford W. Oglesby, and Ballard L. Smith.
Defendant originally contended that the trial court erred in failing to grant his challenges for cause to three prospective jurors. Although defense counsel used peremptory challenges to excuse two of them, the third (Ballard Smith) was sworn as the alternate juror as the defense had exercised all of its peremptory challenges. In brief, defendant admits that the trial court's alleged error in rejecting the challenge for cause as to the third or alternate juror, is without merit because the juror did not actually take part in the deliberations, having been excused before the jury retired to deliberate the case. We will address the remaining contentions of defendant.
LSA-C.Cr.P. Art. 797 states that the state or the defendant may challenge a juror for cause on the ground that:
. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, *600 is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court.
....
A challenge for cause should be granted even where a prospective juror declares impartiality if the juror's testimony on voir dire reveals the existence of facts from which bias, prejudice, or inability to render judgment according to the law may be reasonably inferred. State v. Smith, 430 So.2d 31 (La.1983); State v. Albert, 414 So.2d 680 (La.1982); State v. Lewis, 391 So.2d 1156 (La.1980). The true test of a juror's qualification to serve is his or her ability to judge impartially based on the evidence adduced at trial, as gleaned from the totality of responses given at voir dire. State v. Williams, 410 So.2d 217 (La.1982). The trial judge is vested with broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal absent a showing of abuse. State v. Monroe, 366 So.2d 1345 (La.1978), appeal after remand, 397 So.2d 1258 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983), rehearing denied, 463 U.S. 1249, 104 S.Ct. 36, 77 L.Ed.2d 1455 (1983).

Harvey W. Wilkening
During the questioning of Harvey Wilkening, issue was made of the fact that he knew the district attorney, Paul Carmouche, on a social basis, necessarily calling into question his impartiality and ability to serve on the jury. Defendant alleges error in this relationship. Defendant further urges the fact that Mr. Wilkening had difficulty in accepting the law on intoxication which further called into question his ability to accept the law as given to him by the court. The trial court was thus apparently satisfied with the ability of Mr. Wilkening to render a just verdict and overruled this challenge for cause.
Notwithstanding his answers to questions upon inquiry by the court, defendant argues that his challenge for cause as to Mr. Wilkening should have been granted.
The law does not require a jury to be composed of individuals who are totally unacquainted with the defendant, prosecuting witness, prosecuting attorney and witnesses who may testify at trial. It requires only that jurors be fair and unbiased. State v. McIntyre, 381 So.2d 408 (La.1980), cert. denied, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980).
In State v. Carthan, 377 So.2d 308 (La. 1979), the Louisiana Supreme Court found no abuse of discretion in the district court's denial of a challenge for cause of a juror (1) who had known the prosecuting attorney in high school, (2) considered him a friend, (3) who saw the prosecutor from time to time at social functions, and (4) who had employed the prosecutor's law partner on one occasion. With regard to the juror's relationship to the prosecuting attorney, the court noted that in view of the juror's testimony that his acquaintance with the prosecuting attorney would not interfere with his being fair and impartial and that he would be guided strictly by the facts of the case, the trial court did not abuse its discretion in denying defendant's challenge for cause.
Likewise, in State v. Love, 434 So.2d 448 (La.App.2d Cir.1983), writ denied, 441 So.2d 750 (La.1983), the court found no error in the district court's denial of a challenge for cause of a juror (1) who had known the prosecuting attorney for 15 years, (2) who attended the same church as the prosecutor, (3) whose daughter and the prosecutor attended the same high school during the same years, and (4) whose son worked in the Caddo Parish Sheriff's Office and who was acquainted with the prosecutor. The prospective juror denied that his acquaintance with the prosecutor would influence in any way his verdict if accepted as a juror. The court determined that notwithstanding the juror's casual acquaintance with the prosecutor, there was no reason to disbelieve his assertion that this relation would not influence his verdict.
In this case, Mr. Wilkening, although acquainted with the prosecutor, indicated *601 that this relationship would not influence his verdict.
Relevant to his response regarding intoxication as a defense, Mr. Wilkening was questioned on voir dire about his view of this issue. Although he responded that he felt that intoxication should not be a defense and that individuals should be responsible for their actions regardless of their state, he replied that he would be able to apply the law as given to the best of his ability. Upon further instruction and inquiry by the court, Mr. Wilkening demonstrated a willingness and ability to decide the case impartially according to the law and evidence. Based upon these circumstances and the wide discretion given to the court in these matters, we cannot find that an abuse of that discretion has occurred.

Clifford W. Oglesby
During the questioning of Clifford Oglesby, issue was made of the fact that Mr. Oglesby and the prosecutor, Mr. Ron Inderbitzen, had both previously worked at Crystal Oil Company. However, based upon the prospective juror's voir dire responses, the trial court was apparently satisfied with his ability to render a just verdict and overruled defendant's challenge for cause.
Mr. Oglesby testified that he and the assistant district attorney, Mr. Ron Inderbitzen, had both worked at Crystal Oil Company. Defendant argues that it is reasonable to conclude that such a previous employment relationship would not be fair to the defense, nor could the juror be reasonably expected to fairly assess credibility, resulting in a genuine risk of bias.
Mr. Oglesby further testified that although the prosecutor had at one time worked in the land department in the legal section of Crystal Oil, that posed no problem for him. He felt no "urge to pull for the home team" and assured the court of his ability to decide the case impartially according to the law and the evidence.
In State v. Collins, 546 So.2d 1246 (La. App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990), the district court denied a challenge for cause regarding a prospective juror who was familiar with the assistant district attorney due to her employment at a drug store patronized by the assistant district attorney. Further, the fact that a juror had previously hired the district attorney for unrelated legal business and might do so again in the future was not sufficient reason to grant defendant's challenge for cause absent a showing that the relationship would influence the juror in his decision. See State v. Lee, 559 So.2d 1310, rehearing denied, (La.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991).
As in Collins, we find no merit to defendant's argument that Mr. Oglesby should have been excused solely because of a previous employment relationship with the assistant district attorney.

Argument 2 (Assignment of Error No. 4)
In Assignment of Error No. 4, defendant alleges that the trial court erred in failing to sustain defendant's objection under Batson v. Kentucky when the state established a pattern of using peremptory challenges to strike potential black jurors.
Defendant, who is black, claims the prosecutor used his peremptory challenges to exclude blacks from the petit jury solely on the basis of their race in violation of the Equal Protection Clause of the Fourteenth Amendment, as interpreted in Batson v. Kentucky, supra. Defendant's objection in this case, although made after four black jurors had been challenged peremptorily by the prosecutor, was timely. The objection must be made before the completion of the jury panel. See State v. Williams, 524 So.2d 746 (La.1988).
LSA-C.Cr.P. Art. 795(B) provides that a peremptory challenge by the state shall not be based solely upon the race of a juror. Batson v. Kentucky, supra. According to Batson, the defendant must make a prima facie case of discrimination by showing:
(1) that he is a member of a cognizable racial group;
(2) that the prosecutor has exercised his peremptory challenges to remove other *602 members of that race from the jury; and
(3) that these facts, along with the other relevant circumstances, raise an inference that the prosecutor used his peremptory challenges to exclude the veniremen from the jury on account of their race.
Batson v. Kentucky, 476 U.S. at 96, 106 S.Ct. at 1722. Once the defendant makes a prima facie showing of purposeful discrimination, Batson shifts the burden to the prosecutor to come forward with a neutral explanation for challenging the black jurors. This explanation may be something less than justification of a challenge for cause, but must be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant because of their shared race. Neither may the prosecutor merely assert good faith or deny discriminatory motive. The neutral explanation must be one which is clear, reasonably specific, legitimate and related to the particular case at bar. Batson, supra.
With the recent U.S. Supreme Court decision in Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), a defendant may challenge a race-based peremptory challenge regardless of whether the defendant and the prospective juror are of the same race. However, in this instance, the defendant is black and is challenging the racially motivated exclusion of blacks from the jury by the prosecutor.
Defendant timely raised his objection based upon purposeful discrimination against blacks in the selection of the jury after the state exercised four peremptory challenges against black jurorsDana Darnell, Vria Benjamin, Dorothy Ross, and Erma Edwards. Arguments on the objection were heard outside the presence of the selected jurors and the venire. At the time of the objection, the state had accepted three black jurors and had exercised peremptory challenges against several white jurors during the selection process. It is therefore questionable whether defendant established a prima facie case of systematic exclusion of blacks by the state's use of peremptory challenges. Even if it is assumed arguendo as did the trial court that a prima facie case had been established, the prosecutor offered various explanations for excusing the four blacks from the jury, as required by the trial court. He stated that Erma Edwards had two family members prosecuted by the district attorney's office and thus questioned her impartiality.
Dorothy Ross was excused because, as the prosecutor noted, she was a grandmother with two children, one of whom was approximately the same age of defendant, resulting in the prosecutor's belief that "her demeanor would be problematic." The prosecutor evidently believed Ross was unable to make an objective decision.
Vria Benjamin was excused because the prosecutor believed her personality too weak to enable her to make an objective decision in the case.
Finally, with regard to Dana Darnell, the prosecutor noted that she was a pre-law student and was concerned that she would tend to "second guess" the evidence, and further expressed concern about her ability to participate objectively in the decision making process.
After the prosecutor has presented reasons for his use of a peremptory challenge which on their face are racially neutral, an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge. Batson, supra; State v. Collier, 553 So.2d 815 (La. 1989).
The trial court concluded that the district attorney had independent reasons for exercising his peremptory challenges. Indeed, the reasons for excusing the jurors offered by the state were unrelated to the race of the individuals and represented reasonable considerations by the prosecutor for these four prospective jurors. The final make-up of the jury included nine white and three black jurors. Because great deference is given to rulings by trial judges in these *603 areas, we do not find that the trial court erred in overruling defendant's objection.

Argument 3 (Assignment of Error No. 8)
In Assignment of Error No. 8, defendant argues that the trial court erred in allowing into evidence a diagram drawn by Sgt. Lockwood, indicating the path of the bullets, which defendant argues had never been provided to it by the state.
The state's response to defendant's discovery request contained a typed copy of Sgt. Lockwood's supplemental police report containing his description of the house and a detailed description of the entry or strike points of the bullets. The witness, using a copy of a diagram of the house, indicated in open court the entry or strike points of the bullets. Thus, this information was the same information that Sgt. Lockwood had provided to defendant in his supplemental report and then later depicted on the diagram of the house.
Defendant had access to Sgt. Lockwood's report containing the information he was to testify to at trial and was subject to cross-examination. Therefore, no showing of prejudice has been made. See State v. Bates, 536 So.2d 427 (La.App. 2d Cir.1988), writ denied, 537 So.2d 210 (La.1989). This assignment of error is meritless.

Argument 4 (Assignment of Error No. 7)
In Assignment of Error No. 7, defendant argues that the trial court erred in denying defendant's motion for mistrial when the jurors witnessed defendant being escorted across the hall in shackles.
Ordinarily, the trial court shall seek to prevent an accused from being viewed shackled, handcuffed or attired in any manner which is destructive of the presumption of innocence and of the dignity and impartiality of judicial proceedings. State v. Wilkerson, 403 So.2d 652 (La. 1981). However, the momentary use of restraints for the limited purposes of transporting an accused does not mandate a mistrial. State v. Wilkerson, supra; State v. Guillory, 544 So.2d 643 (La.App. 3d Cir. 1989), writ denied, 551 So.2d 1334 (La. 1989).
In the present case, defense counsel moved for a mistrial on the grounds that a majority of the jury saw defendant escorted across the hall in shackles following a morning break in the proceedings. Defendant argues he was prejudiced at that point and was unable to obtain a fair trial. In State v. McMellon, 525 So.2d 1094 (La.App. 3d Cir.1988), writ denied, 532 So.2d 149 (La.1988), the court found no reversible error where a defendant was transported into the courtroom in handcuffs as the jurors were returning from lunch break. In denying the claim, the McMellon court, quoting State v. Jasper, 506 So.2d 211 (La.App. 5th Cir. 1987), stated:
In any case, the defendant was not handcuffed during the trial. He was handcuffed solely for the purposes of transport to and from the courtroom. Under the circumstances, the possibility that a juror may have seen the defendant in handcuffs does not appear to have so prejudiced the defendant as to warrant relief on appeal.
State v. McMellon, at 1096.
Although some jurors may have viewed the defendant in shackles being transported to or from the courtroom following a morning break, defendant has made no showing of prejudice. The momentary use of restraints did not mandate a mistrial. See State v. Kinchen, 290 So.2d 860 (La. 1974), and the cases cited therein.
Defendant additionally argues that prior to the morning session of trial on October 20, 1990, the record indicates an additional reference to the shackles on the defendant which necessarily demonstrates that he had been shackled during the trial. However, we find nothing in the record to indicate that the defendant was shackled during the trial, and even assuming arguendo that the defendant was shackled during the trial proceedings, defense counsel made no objection to such alleged restraint. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. Otherwise, the issue is not properly ruled upon by the *604 trial court and is not properly before the court of appeal. State v. de la Beckwith, 344 So.2d 360 (La.1977); LSA-C.Cr.P. Art. 841. This assignment of error is without merit.

Argument 5 (Assignment of Error No. 9)
Defendant argues in Assignment of Error No. 9 that the trial court erred in denying defendant's motion for new trial.
The record indicates that defendant filed a pro-se motion for new trial on February 26, 1990, and defense counsel filed a motion for new trial on March 9, 1990. Defendant argues these motions were apparently never heard by the court. Defendant requests this court to consider the sufficiency of evidence by his pro-se motion for new trial or remand the matter for a hearing on the motion. However, contrary to defendant's contention, the minutes reveal that on March 19, 1990, the trial court denied his motion for new trial.
Ordinarily, there is no appeal from the trial court's refusal to grant a motion for new trial except for error of law. LSA-C.Cr.P. Art. 858; State v. Seay, 521 So.2d 1206 (La.App. 2d Cir.1988); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). On the motion for new trial, the trial court may assess only the weight of the evidence. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The question of sufficiency of evidence should be raised by a motion for post-verdict judgment of acquittal. LSA-C.Cr.P. Art. 821; State v. Seay, supra. The minutes reflect that defense counsel filed a motion for post-verdict judgment of acquittal on March 9, 1990. The trial court denied the motion on March 19, 1990. State v. Raymo, 419 So.2d 858 (La.1982); State v. Peoples, 383 So.2d 1006 (La.1980). Sufficiency errors must be reviewed on appeal "regardless of how the error is brought to the attention of the court."
In order to satisfy due process standards, the record evidence, viewed in a light most favorable to the prosecution, must be sufficient for a rational fact-finder to conclude that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Magouirk, 561 So.2d 801 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La. 1990).
Where the conviction is based upon circumstantial evidence, LSA-R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. However, LSA-R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula. It is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Kelly, 576 So.2d 111 (La.App. 2d Cir.1991); State v. Heck, 560 So.2d 611 (La.App. 4th Cir.1990), writ denied, 566 So.2d 395 (La.1990).
Manslaughter and Attempt are defined by statute as:
§ 31. Manslaughter
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.

*605 Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
§ 27. Attempt
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with an dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime, and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
....
The evidence in this case included several inculpatory statements made by the defendant to several police officers and his brother. Defendant claimed that the shots were fired by an unknown man he had seen earlier outside of the decedent's house. The jury considered this testimony and found defendant's testimony unbelievable. It accepted the testimony of the state's witnesses as credible. Credibility determinations are a matter left to the discretion of the trier of fact. It is not a function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses. State v. Magouirk, supra.
Viewed in the light most favorable to the prosecution, this evidence supports a rational fact-finder's conclusion that defendant was guilty of every essential element of the crimes for which he was convicted. This assignment of error is without merit.

Argument 6 (Assignment of Error No. 10)
Finally, defendant argues that the trial court erred in imposing an excessive sentence.
With this assignment of error, the defendant argues the trial court's sentence is excessive because it orders the sentences to be served "concurrently without benefit of parole, probation or suspension of sentence." However, the sentencing transcript does not indicate that the sentences were to be served without benefit of parole, probation or suspension of sentence. Rather, the minutes indicate the court ordered the sentences to be served subject to the conditions provided by law. Defendant in brief admits that the sentence appears to be legal as there is no judicial prohibition of parole stated in the sentence.
Defendant does argue that the trial court erred in imposing an excessive sentence. He concedes that the trial court substantially complied with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1, but failed to consider the grounds enumerated specifically in LSA-C.Cr.P. Art. 894.1(B)(3), (4), and (5). Defendant argues the court should have, but failed to include, the fact that the defendant and decedent were intoxicated at the time of the incident, the defendant was initially struck over the head with a .22 caliber rifle by the decedent and was put out or forced out of the decedent's residence, and the court did not consider the decedent's initial overt act as the aggressor.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance as long as the record reflects that the court adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The important elements which should be considered are the defendant's personal history *606 (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
However, the trial court's failure to comply with Art. 894.1 does not automatically render a sentence invalid. The Louisiana Supreme Court has held that although Art. 894.1 provides useful guidelines for the determination of the nature and length of a sentence, compliance with its provisions is not an end in itself and is designed as a guideline to channel the court in sentencing discretion and to provide a factual record for excessiveness review. The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. If the record clearly supports an adequate factual basis for the sentence, remand is not required even where there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Boatright, 406 So.2d 163 (La.1981); State v. Taylor, 430 So.2d 686 (La.App. 2d Cir.1983), writ denied, 438 So.2d 575 (La.1983).
Second, the reviewing court must then determine whether the sentence imposed was too severe given the circumstances of the case and background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). A trial court has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra; State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988).
In selecting a proper sentence, the trial court is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied, 452 So.2d 695 (La.1984). The trial court may consider whatever factors and evidence it deems important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983).
As stated earlier, the trial court considered defendant's PSI report and his previous criminal activity. The court did note provocation for defendant's actions. Certainly, he was aware of the circumstances surrounding the incident and took note of the jury's consideration of them. The court found the defendant was in need of correctional treatment and that a lesser sentence than that actually imposed would deprecate the seriousness of the offense. The court commented on the seriousness of the offense resulting in one death and two injured individuals. Clearly, contrary to defendant's assertion, the trial judge did note provocation for the offense. Further, the record indicates adequate compliance with LSA-C.Cr.P. Art. 894.1.
Relevant to the excessive sentence claim, the trial court paid particular attention to defendant's prior criminal record. In 1981, defendant was convicted of drinking in public and resisting an officer. Also indicated were charges for simple assault and criminal mischief. In 1983, defendant was convicted of simple burglary for which he was sentenced to three years at hard labor. The sentence was suspended and he was placed on supervised probation. Also in 1983, defendant was convicted of driving while intoxicated. Defendant was adjudicated a second felony offender on March 19, 1990. A conviction for manslaughter carries with it a penalty of imprisonment at hard labor for not more than twenty-one *607 years. LSA-R.S. 14:31. A conviction for attempted manslaughter carries with it a penalty of imprisonment at hard labor for not more than ten and one-half years. LSA-R.S. 14:27 and 14:31. Under the habitual offender law, defendant, as a second felony offender, was subject to a penalty of imprisonment at hard labor for not more than 42 years for manslaughter and 21 years for attempted manslaughter. LSA-R.S. 15:529.1.
In State v. Flowers, 574 So.2d 448 (La. App. 2d Cir.1991), this court found that a 17-year sentence imposed upon a 23-year-old, first felony offender who led a relatively law-abiding life, was not excessive. A 30-year sentence imposed upon a defendant, as a second felony offender, was affirmed by the court in State v. Wooden, 572 So.2d 1156 (La.App. 1st Cir.1990). And in State v. Tauzier, 569 So.2d 14 (La.App. 4th Cir.1990), the court found that the 10-year sentence imposed upon a defendant convicted of attempted manslaughter was not excessive. Further, this court determined that a maximum sentence of 10½ years at hard labor imposed upon a defendant charged with attempted second degree murder and convicted after trial of attempted manslaughter was not excessive. State v. Hollingsworth, 550 So.2d 663 (La. App. 2d Cir.1989). Finally, in State v. James, 576 So.2d 611 (La.App. 4th Cir. 1991), a 21-year sentence imposed upon a defendant, adjudicated a second felony offender, indicted for second degree murder and found guilty of manslaughter was not excessive, although portions of his sentence denying parole and good-time eligibility were deleted.
Based upon the foregoing, we do not find that the trial court abused its discretion in imposing the midrange sentences of 25 years hard labor for manslaughter and the two 12½ years hard labor for the attempted manslaughter convictions, all to run concurrently. Accordingly, defendant's convictions and sentences are affirmed.

CONCLUSION
For the above and foregoing reasons, defendant's convictions and sentences for manslaughter and attempted manslaughter are affirmed.
AFFIRMED.